EXHIBIT 2

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>DEEBA PERKINS</u>
**Plaintiff**

V.

<u>GEICO CASUALTY COMPANY, ET AL.</u>
**Defendant**

**CASE NO.** CV24994917

**JUDGE** BRIAN MOONEY

# SUMMONS  SUMC  CM

**Notice ID:** 53400119

| From: | DEEBA PERKINS | P1 |
| | 24451 LAKE SHORE BLVD. | |
| | EUCLID OH 44123 | |

| Atty.: | PATRICK J PEROTTI |
| | 60 SOUTH PARK PLACE |
| | PAINESVILLE, OH 44077-0000 |

| To: | GEICO CASUALTY COMPANY | D1 |
| | ONE GEICO CENTER | |
| | MACON GA 31295 | |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>03/26/2024</u>

By_____
**Deputy**

CMSN130

Date Produced: 04/15/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3549 7394 02. Our records indicate that this item was delivered on 04/11/2024 at 06:05 a.m. in MACON, GA 31208. The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

DEEBA PERKINS
**Plaintiff**

V.

GEICO CASUALTY COMPANY, ET AL.
**Defendant**

**CASE NO.**  CV24994917

**JUDGE**  BRIAN MOONEY

# SUMMONS  SUMC  CM

Notice ID:  53400125



| From: | DEEBA PERKINS<br>24451 LAKE SHORE BLVD.<br>EUCLID OH 44123 | P1 |
|---|---|---|

| Atty.: | PATRICK J PEROTTI<br>60 SOUTH PARK PLACE<br>PAINESVILLE, OH 44077-0000 |
|---|---|

| To: | GEICO INDEMNITY CO.<br>ONE GEICO PLAZA<br>WASHNGTON DC 20076 | D7 |
|---|---|---|

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: 03/26/2024

By_____
**Deputy**

CMSN130

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

DEEBA PERKINS
**Plaintiff**

V.

GEICO CASUALTY COMPANY, ET AL.
**Defendant**

**CASE NO.**  CV24994917

**JUDGE**  BRIAN MOONEY

# SUMMONS  SUMC  CM

**Notice ID:**  53400124

| From: | DEEBA PERKINS | P1 |
| | 24451 LAKE SHORE BLVD. | |
| | EUCLID OH 44123 | |

| Atty.: | PATRICK J PEROTTI |
| | 60 SOUTH PARK PLACE |
| | PAINESVILLE, OH 44077-0000 |

| To: | GEICO GENERAL INS. CO. | D6 |
| | ONE GEICO PLAZA | |
| | WASHNGTON DC 20076 | |

## NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>03/26/2024</u>

By_____
**Deputy**

CMSN130

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>DEEBA PERKINS</u>
**Plaintiff**

V.

<u>GEICO CASUALTY COMPANY, ET AL.</u>
**Defendant**

**CASE NO.** CV24994917

**JUDGE** BRIAN MOONEY

# SUMMONS   SUMC CM

**Notice ID:** 53400123

| From: | DEEBA PERKINS | P1 |
| | 24451 LAKE SHORE BLVD. | |
| | EUCLID OH 44123 | |

| Atty.: | PATRICK J PEROTTI |
| | 60 SOUTH PARK PLACE |
| | PAINESVILLE, OH 44077-0000 |

| To: | GEICO CHOICE INS. CO. | D5 |
| | ONE GEICO PLAZA | |
| | WASHNGTON DC 20076 | |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

By_____
**Deputy**

**Date Sent:** <u>03/26/2024</u>

CMSN130

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>DEEBA PERKINS</u>
**Plaintiff**

V.

<u>GEICO CASUALTY COMPANY, ET AL.</u>
**Defendant**

**CASE NO.**  CV24994917

**JUDGE**  BRIAN MOONEY

# SUMMONS  SUMC  CM

**Notice ID:**  53400122

| From: | DEEBA PERKINS | P1 |
| | 24451 LAKE SHORE BLVD. | |
| | EUCLID OH 44123 | |

| Atty.: | PATRICK J PEROTTI |
| | 60 SOUTH PARK PLACE |
| | PAINESVILLE, OH 44077-0000 |

| To: | GEICO SECURE INS. CO. | D4 |
| | ONE GEICO PLAZA | |
| | WASHNGTON DC 20076 | |

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>03/26/2024</u>

By_____
**Deputy**

CMSN130

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

DEEBA PERKINS
**Plaintiff**

V.

GEICO CASUALTY COMPANY, ET AL.
**Defendant**

**CASE NO.** CV24994917

**JUDGE** BRIAN MOONEY

# SUMMONS  SUMC  CM

**Notice ID:** 53400121

From:  DEEBA PERKINS          P1
       24451 LAKE SHORE BLVD.
       EUCLID OH 44123

Atty.:  PATRICK J PEROTTI
        60 SOUTH PARK PLACE
        PAINESVILLE, OH 44077-0000

To:  GEICOADVANTAGE INS. CO.       D3
     ONE GEICO PLAZA
     WASHNGTON DC 20076

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: 03/26/2024

By_____
                                **Deputy**

CMSN130

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>DEEBA PERKINS</u>
**Plaintiff**

V.

<u>GEICO CASUALTY COMPANY, ET AL.</u>
**Defendant**

**CASE NO.**  CV24994917

**JUDGE**  BRIAN MOONEY

# SUMMONS  SUMC  CM

**Notice ID:**  53400120



| From: | DEEBA PERKINS | P1 |
| | 24451 LAKE SHORE BLVD. | |
| | EUCLID OH 44123 | |

| Atty.: | PATRICK J PEROTTI |
| | 60 SOUTH PARK PLACE |
| | PAINESVILLE, OH 44077-0000 |

| To: | GOVERNMENT EMPLOYEES INSURANCE | D2 |
| | COMPANY | |
| | ONE GEICO PLAZA | |
| | WASHNGTON DC 20076 | |

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>03/26/2024</u>

By_____
**Deputy**

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                                          CV 24 994917

 vs.

GEICO CASUALTY COMPANY, ET AL.          **Judge:**  BRIAN MOONEY

**Pages Filed:**  1



# Common Pleas Court of Cuyahoga County, Ohio
## Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins,individually and on behalf of all others similarly situated,
_____
Plaintiff(s)

Vs.

Geico Casualty Company, et al. _____
Defendants(s)

Case Number _____

Judge: _____

Date: 3/25/2024 _____

Method of Service Requested:

Certified Mail Service ✔ Ordinary Mail Service ☐

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

Name(s) and Address(es) of Parties to Serve:

GEICO Advantage Ins. Co. _____
One GEICO Plaza _____
Washington, DC 20076 _____
_____

Additional Instructions:

_____
_____

Filing Party Name: Patrick J. Perotti _____    Supreme Court ID if applicable: 0005481 _____

Phone Number: (440) 352-3391 _____

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                           CV 24 994917

      vs.

GEICO CASUALTY COMPANY, ET AL.          **Judge:** BRIAN MOONEY

**Pages Filed:** 89

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

DEEBA PERKINS,
Individually and on behalf of
all other similarly situated,
24451 Lake Shore Blvd,
Euclid, OH 44123-1260

       Plaintiff,

       vs.

GEICO CASUALTY COMPANY
One GEICO Center
Macon, Georgia 31295-0001

       And

GOVERNMENT EMPLOYEES
INSURANCE COMPANY
One GEICO Plaza
Washington, DC 20076

       And

GEICO Advantage Ins. Co.
One GEICO Plaza
Washington, DC 20076

       And

GEICO Secure Ins. Co.
One GEICO Plaza
Washington, DC 20076

       And

**CASE NO.**

**Judge** _____

**CLASS ACTION COMPLAINT**

**[Jury Demand Endorsed Hereon]**

2

GEICO Choice Ins. Co.
One GEICO Plaza
Washington, DC 20076

　　　And

Geico General Ins. Co.
One GEICO Plaza
Washington, DC 20076

　　　And

Geico Indemnity Co.
One GEICO Plaza
Washington, DC 20076

　　　Defendants.

Now comes Plaintiff Deeba Perkins ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, and for her Class Action Complaint against Defendants Geico Casualty Company and Government Employees Insurance Company (collectively "GEICO or Geico" or "Defendant") states:

## I.　　INTRODUCTION

1.  Plaintiff and the prospective Class Members purchased automobile insurance policies for Ohio garaged vehicles from Defendant.

2. Plaintiff and the prospective Class Members made first party insurance claims when they suffered damage to their vehicles, and Defendant declared their vehicles to be a total loss requiring Defendant to pay the actual cash value ("ACV") of those vehicles.

3. Instead of paying ACV, as required by the insurance policy and Ohio law, Defendant reduced the payment amount by deducting an arbitrary "condition adjustment" from the actual cost of comparable vehicles used to determine the ACV, even though Defendant never inspected the comparable vehicles so had no factual basis for making that deduction.

4. Because of this practice Defendant failed to pay ACV, breached the policy contract with Plaintiff and the Class Members, and violated Ohio law. Defendant engaged in this practice with the intent to defraud Plaintiff and all customers in the Class.

5. When purporting to determine the ACV of the loss vehicle, Defendant "thumbed the scale" in its favor and to the detriment of its insureds by arbitrarily reducing the value of the comparable vehicles used in the calculation. The challenged arbitrary reduction is applied to each of the comparable vehicles, on top of adjustments for objectively verifiable differences such as mileage, options, and Make/Model/Trim.

6.      The comp vehicle condition adjustments reduce the value of the comparable vehicle, lowering the ACV paid on Plaintiff's total loss claim.

7.      The valuation reports used by Defendant neither itemize nor explain the basis for the comp vehicle condition adjustments, which are applied categorically without regard for the unique characteristics of comparable vehicles.

8.      Multiple comparable vehicles with varying mileage have their values reduced by the exact same amount, down to the last dollar. This reduction is contrary to appraisal standards and methodologies and is contrary to Ohio law, which does not permit arbitrary, unsupported deductions or un-itemized deductions.

9.      The only purported explanation for the downward adjustment to the price of comparable vehicles is a vague, cryptic statement claiming that the reduction "sets that comparable vehicle to Average Private condition…." There is no explanation as to why that is the case, how the amount is determined, or even any basis to believe that comparable vehicles were not already in such condition.

10.      In deducting the "condition adjustment" from the price of comparable vehicles Defendant assumed that every component of every comparable vehicle, all of which are used vehicles previously owned by private parties, were in better than "private passenger" condition, including components such as the headliner and the glass.

5

11.     In Plaintiff's case for example, Defendant appears to have assumed without looking that a comparable vehicle with 203,828 miles offered for sale by Valley Auto Finance in Warren, Ohio had a better than private condition headliner, dashboard, carpets, seats, glass, body, paint, tires, and mechanical components, so Defendant subtracted $961 from the purchase price to supposedly account for that assumed better condition.

12.     Defendant made the exact same arbitrary deduction from all of the comparable vehicles used to derive the ACV of Plaintiff's loss vehicle, leading Defendant to underpay Plaintiff by $961.

13.     This pattern and practice of undervaluing total loss vehicles when paying automobile claims, through the systemic use of these invalid and deceptive comp vehicle condition adjustments, violates Geico's insurance policies with its Ohio insureds.

14.     This pattern and practice represents a plan, scheme and design to mislead and defraud Defendant's insureds, and benefit Defendant financially through improper and deceptive means.

15.     Through this unlawful practice, Defendant failed to pay ACV, in breach of Defendant's insurance contract with Plaintiff and the proposed Class members, and contrary to Ohio law.

6

16.    Further, Defendant intended and did in fact defraud Plaintiff and all customers in the Class.  This suit is brought to stop this unlawful practice and obtain relief for its victims.

## II.    PARTIES

17.    Plaintiff resides in Cuyahoga County, Ohio.  The subject policy was issued for vehicles garaged in Ohio, owned by Plaintiff.

18.    Defendant Government Employees Insurance Company operates one of the largest property and casualty insurance companies in the United States.

19.    Defendant GEICO Casualty Company is one of Defendant Government Employees Insurance Company's underwriters, along with GEICO Advantage Ins. Co., GEICO Secure Ins Co.; Geico Gen Ins Co.; Geico Ind Co.; and Government Employees Ins Co.  This action seeks relief for all GEICO customers, through any and all underwriters for policies issued for Ohio garaged vehicles.

20.    All acts alleged in this Complaint were taken by and through the authorized officers, agents, employees and representatives, acting for GEICO.

21.    The acts, practices, and polices alleged herein were conceived, adopted, implemented and originated from Defendant Government Employees Insurance Company, for all its operating companies and GEICO underwriters in and for Ohio.

Electronically Filed 03/25/2024 10:53 / / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

22.    GEICO investigates, handles, and adjusts all insurance claims using the same policies and procedures, regardless which GEICO subsidiary was involved in issuing (or underwriting) the relevant policy. These common practices and procedures, including those being challenged by this lawsuit, are implemented the same for the adjustment of all claims for actual cash value when a total loss is covered by the policy. Therefore, all Ohio customers are affected in the same way, and by the same actions, of each Defendant.

## III.    THE COVERED TRANSACTIONS

23.    Defendant's insurance policies provide Plaintiff and the Class coverage for damage to a covered auto.

24.    Plaintiff, and the proposed Class members, each suffered damage to their auto while insured by GEICO.

25.    Plaintiff and the proposed Class members made a first party claim for payment for damage to their vehicles, and Defendant declared their vehicles to be a total loss.

26.    The dispute here is not about the amount of the loss to the vehicle (*i.e.,* how much damage it suffered and the cost to repair that damage), but rather this dispute involves interpretation of the Policy, with GEICO applying a deduction from ACV not permitted by the Policy or Ohio law.

8

## IV.   THE POLICY PROVISIONS GOVERNING DEFENDANT'S ACV PAYMENTS FOR TOTAL LOSS VEHICLES

27.     Defendant's policies (page 10 and 11) provide coverage for damage to covered autos from collision:

p. 10. SECTION III - PHYSICAL DAMAGE COVERAGES

Your Protection For Loss Or Damage To Your Car
* * *
    p. 11 PART I - COMPREHENSIVE AND COLLISION COVERAGE
    ***
    Collision
    1. We will pay for collision loss to the owned auto or non-owned auto for the amount of each loss less the applicable deductible.

28.     The policies (pages 12-13) further provide that the carrier can elect to repair/replace the damage, or pay the actual cash value of the damaged vehicle.

p. 12-13 LIMIT OF LIABILITY

The limit of our liability for loss:
1. is the actual cash value of the property at the time of the loss;
2. for the repair of the damaged property, will not exceed the prevailing competitive price to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the loss. Although you have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At your request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

9

29.     The policy states (page 13) that actual cash value will include adjustments for betterment and depreciation: "Actual cash value of property will be determined at the time of the loss and will include an adjustment for depreciation/betterment and for the physical condition of the property."

30.     The terms "actual cash value," "betterment," and "depreciation" are identified in the policies as follows, at page 10:

DEFINITIONS
  * * *
Under this Section, the following special definitions apply:
1. Actual cash value is determined by the market value, age, and condition of the vehicle or property at the time the loss occurs less depreciation or betterment.
2. Betterment is improvement of the auto or property to a value greater than its pre-loss condition.
* * *
5. Depreciation means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

31.     This policy language is uniform among all of the Ohio automobile policies issued by Defendant during the Class Period, as defined below.

32.     However, the policies do not indicate, by definition or otherwise, whether ACV is the value of the Loss Vehicle at the time of the loss, or is the cost to replace the vehicle with like kind and condition.

33.     Defendant includes definitions in the policy for numerous other terms, and had the ability to also define the scope and operation of ACV in the policy as it saw fit, so long as the definition did not conflict with applicable law.

Electronically Filed 03/25/2024 10:53 / / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

34.     Defendant chose not to define the scope and operation of the term ACV when it used that term in its policies.

35.     This case deals with claims where Defendant purported to pay the actual cash value of a total loss to the vehicle, so Defendant's definition of "betterment" does not apply here because the loss vehicle was not repaired so could not have been "improv[ed] … to a value greater than its pre-loss condition." At the very least the policy is ambiguous as to whether the un-specified, arbitrary comp vehicle condition adjustment is a proper betterment deduction.

36.     Similarly, Defendant's definition of "depreciation" does not apply to the situation where Defendant applies a condition adjustment to comparable vehicles without actually comparing them to the loss vehicle, or at the very least is ambiguous as to whether the comp vehicle condition adjustment is a proper depreciation adjustment.

## V.     THE UNIFORM PROCESS DEFENDANT USES TO DETERMINE THE ACV OF TOTAL LOSS VEHICLES

37.     The process used by Defendant to determine ACV consists of several, uniform steps.

38.     Defendant uniformly uses this same process for all its insureds.

39.     Initially, Defendant determines if it will repair the vehicle, or declare the vehicle a total loss and pay ACV.  This complaint does not challenge that aspect of Defendant's conduct.

40.    If a vehicle is considered a total loss Defendant, through its vendor CCC Intelligent Solutions Inc. ("CCC"), utilizes a standard methodology to determine ACV generally referred to as the comparable methodology, or more frequently called the "comp" methodology. This Complaint does not challenge the use of the comp methodology, which is a recognized method permitted by the Ohio insurance regulations. The CCC One® Market Valuation for Plaintiff Perkins is attached as Exhibit 2.

41.    First, CCC identifies comparable vehicles recently offered for sale in the local or regional market and determines a "List Price" or "Take Price" for those comp vehicles. In Plaintiff's case 8 comparable vehicles were listed in the CCC report. Defendant's selection of comparable vehicles is not challenged in this Complaint.

42.    Second, CCC adjusts the price of the comparable vehicles to account for objectively verified differences in "Make/Model/Trim," "Options" and "Mileage." Plaintiff does not challenge these objectively verified adjustments, which are standard in the appraisal industry.

43.    Third, CCC deducts from the comparable vehicle's price an improper and arbitrary sum deceptively called a "condition adjustment," which reduces the value of the comparable vehicles and ultimately the ACV payment made to the insured.

44.     That unspecified, improper and arbitrary deduction, divorced from the actual condition of the comps and the loss vehicle, is not consistent with the comp methodology, violates the Ohio insurance regulations incorporated in the Policy, and is not a proper betterment or depreciation deduction under a reasonable interpretation of those terms.

45.     Defendant failed to disclose and intentionally concealed the calculation of this improper comp vehicle "Condition adjustment" in the valuation report provided to Plaintiff (Exhibit 2), so it was impossible for Plaintiff to know how Defendant arrived at the amount of the comp vehicles condition adjustment, as opposed to objectively verifiable adjustments for mileage, options, and Make/Model/Trim.

46.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support any comp vehicle condition adjustment, much less the specific downward adjustment used in Plaintiff's valuation report.

47.     The improper deduction reduces the Comparable Vehicles' value, and thus reduces the Base Vehicle Value shown on the valuation report, which is the weighted average of the comparable vehicles, and thereby reduces Defendant's ACV payment to the Plaintiff and the proposed Class members.

13

## VI.   DEFENDANT'S DISTORTED VALUATION METHODOLOGY USED TO UNIFORMLY COMMIT THE UNLAWFUL CONDUCT CHALLENGED BY THIS COMPLAINT

48.     The CCC valuation methodology is not something chosen by Plaintiff or any proposed Class member.

49.     Defendant used the CCC methodology to calculate all of Defendant's ACV payments to the proposed Class members, and Defendant's deduction of the comp vehicle condition adjustment is uniformly used in all such calculations.

50.     Defendant's insureds have no part in deciding whether this deduction is applied.  In fact, the way the amount of the deduction is reached is not revealed to the insureds. Nor do consumers like Plaintiff or the proposed Class members have access to CCC Intelligent Solutions or other third-party vendors chosen by Defendant.

51.     The comp vehicle condition adjustment uniformly violates the requirement in Ohio Administrative Code 3901-1-54(H)(2) that betterment deductions be "itemized and specified" because Defendant never compared the actual condition of the comp vehicles to the condition of Plaintiff's loss vehicle.

## VII.   DEFENDANT UNDER-PAYS ACV IN VIOLATION OF THE INSURANCE CONTRACT AND OHIO LAW

52.     After Defendant applied the improper deduction to reduce the Base Vehicle Value, it issued an improperly reduced ACV payment to Plaintiff and the proposed Class members.

Electronically Filed 03/25/2024 10:53 / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

53.    Defendant's improperly reduced payments were not the ACV as required by the Policy and Ohio law.

54.    Defendant reduced the ACV of total loss vehicles by the amount of the improper deduction, in breach of the Policy and in violation of Ohio law.

55.    Plaintiff's position is that Defendant's insurance Policy requires Defendant to pay the full ACV, not the reduced amount calculated and paid by Defendant. Defendant takes the contrary position and interprets the policy to permit the challenged comp vehicle condition adjustment.

56.    The parties have a current, legitimate and concrete dispute over that coverage issue; the interpretation of the Policy; and application of Ohio law to that dispute.

## VIII.  CLASS ALLEGATIONS AND DEFINITION

71.    This action is brought on behalf of the Plaintiff and the following class:

All Ohio residents who: 1) were insured by Defendant under a motor vehicle policy providing first party coverage for vehicle damage; 2) suffered damage to their auto determined to be a total loss, made a first party claim for coverage to Defendant, and Defendant made payment claimed to be the actual cash value of the vehicle; 3) the actual cash value payment was based on the amount shown on a CCC One® Market Valuation Report.  The class excludes Plaintiff's counsel; officers of the court handling this matter; and employees of Defendant. The class period is the longest period of time permitted by Ohio law before the filing of this action, and thereafter.

72.     Plaintiff and the class reserve the right under Rule 23 of the Civil
Rules to amend or modify the class to include greater specificity, by further
division into subclasses, or by limitation to particular issues.

73.     This action has been brought and may be properly maintained as a
class action under the provisions of Rule 23 of the Civil Rules because there is a
well-defined community of interest in the litigation and the proposed class is easily
ascertainable.

a.     **Numerosity**

74.     Members of the proposed class are so numerous that joinder of all
members is impracticable. While the precise number of proposed class members
has not been determined at this time, Plaintiff is informed and believes that there
are hundreds of individuals in the Class.

b.     **Commonality**

75.     Common questions of law and fact exist as to all members of the
proposed class. Such questions include, but are not limited to:

- An interpretation of the Policy, as to the scope and operation of "actual cash
  value;" as to the use of a uniform deduction not provided by the policy, and
  not disclosed in the policy; and as to the legal obligations of Defendant to
  the Plaintiff and the putative class members;

- Whether Defendant breached its insurance contract with the Plaintiff and the class members by applying the comp vehicle condition adjustment in order to reduce their ACV payments;

- Whether Defendant's insurance contract is construed against Defendant as to the meaning of the terms "ACV", "depreciation" and "betterment";

- Whether it is reasonable to calculate ACV without reducing the value of the comparable vehicles by the "Condition adjustment";

- Whether Defendant committed fraud by applying the deduction in the transactions with the Plaintiff and the Class members

- Whether the statute of limitation is tolled based on fraud;

- Whether Defendant's conduct in applying the comp vehicle condition adjustment caused injury in fact to the Plaintiff and the class members;

- Whether Defendant should be restrained and thereafter enjoined from continuing to apply the deduction to its insureds, without first disclosing that practice to them in their policies.

**c.  <u>Typicality</u>**

76.     The claims of the Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly harmed by Defendant's wrongful conduct.

17

### d.    **Adequacy of Representation**

77.    Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in class action and insurance litigation.

### e.    **Superiority of Class Action**

78.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

79.    Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### f.    **Rule 23 Further Requirements**

80.    Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendant.

81.    Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests.

82.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief with respect to the class as a whole.

83.     Questions of law or fact common to the class members predominate over any questions affecting only individual members.

## IX.     DEFENDANT'S COMP VEHICLE CONDITION ADJUSTMENT IS ARBITRARY AND SPECULATIVE

84.     There is no provision in Defendant's insurance contract for using the improper comp vehicle condition adjustment to determine ACV.

85.     Defendant's un-specified comp vehicle condition adjustment is not based on objective criteria, nor on facts or data that is itemized (as required by law) so as to be able to be confirmed.  It cannot be verified as "correct" by Defendant, Plaintiff and the Class, or the Court.

86.     The amount of the comp vehicle condition adjustment, rather than actually seeking to reflect a difference in the "condition" of a comp vehicle as compared to the loss vehicle, is arbitrary and speculative.

87.     Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing

Electronically Filed 03/25/2024 10:53 / / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

the scales in favor of itself through the comp vehicle condition adjustment, which is inconsistent with the comp valuation methodology.

## X.   FACTUAL ALLEGATIONS

### A.    The Unlawful Conduct

88.    Defendant represents to its policyholders, uniformly and in writing in their policy, that it will pay ACV less applicable deductible in the event the policyholder suffers a total vehicle loss.

89.    Instead, Defendant breached this promise by paying an amount less than actual cash value minus deductible, which results in a change of the nature and scope of coverage under the policy, with the Plaintiff and the Class Members receiving less from Defendant than is due under law and under the terms of the policy.

90.    The unlawful reduction occurs because of the standard, uniform application by Defendant of a comp vehicle "condition adjustment" designed to lower the value of the comparable vehicles and ultimately the Base Vehicle Value.

91.    The policy does not provide for any such deduction.

92.    Ohio law does not provide for such a deduction.

93.    The deduction is not based on any objective fact, and has no relation to the operation of the marketplace for the purchase and sale of motor vehicles.

94.     The use of the deduction is arbitrary and fabricated, preventing a court, a policyholder, or anyone else from confirming whether the deduction is a correct amount for any vehicle.

95.     The Policy terms "actual cash value," "depreciation" and "betterment" are subject to a reasonable interpretation that it does not include the arbitrary and speculative comp vehicle "condition adjustment."

96.     Because it is a contract drafted by Defendant, the insurance Policy must be construed in favor of Plaintiff and against Defendant.

**B.      Defendant paid Plaintiff less than what was required under the Policy.**

97.     Plaintiff is no longer insured by Defendant and does not possess a copy of the Policy, but a true and accurate copy of an exemplar policy form used by Defendant in Ohio is attached as Exhibit 1, and upon information and belief Plaintiff's policy did not materially differ from Exhibit 1.

98.     The insurance policy was issued to Plaintiff for a vehicle garaged in Ohio, as were the insurance policies issued to all the proposed Class Members.

99.     The insurance policy terms provided coverage for a total loss of the policyholder's listed, insured vehicle.

100.    The policy provides for payment for a property loss either: a) through repair or replacement; or, b) payment of actual cash value, less deductible.

101.    The Policy makes no reference to, or mention of, a comp vehicle "condition adjustment" or other like deduction designed to thumb the scale in favor of Defendant when determining ACV.  A 'condition adjustment' is not a standard term in the motor vehicle insurance policies issued by the top ten carriers (by dollar sales) writing auto policies in Ohio.

102.    Defendant has not informed its insureds, through Policy language, that a comp vehicle "condition adjustment" will be taken when determining ACV.

103.    Plaintiff's insurance policy is a standard form contract with language that is materially identical to the language of the insurance policies of the Class Members.

C.      Plaintiff's Property Damage Claim.

104.    Plaintiff's vehicle insured by Defendant was damaged in an accident on June 10, 2023, and Plaintiff submitted a first party insurance claim to Defendant on June 12, 2023.

105.    Defendant determined Plaintiff's damaged vehicle was a total loss and that Defendant owed the ACV of the vehicle at the time of loss to Plaintiff.

106.    Defendant inspected Plaintiff's vehicle to determine its condition, using detailed condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss.

22

107.   Defendant then used CCC to supposedly determine the ACV of Plaintiff's vehicle, for the purpose of paying Plaintiff's insurance claim.

108.   At Defendant's request CCC generated the "Market Valuation Report" attached as Exhibit 2, using the above-described distorted comp methodology, and provided it to Defendant.

109.   The CCC valuation methodology uses a weighted average of adjusted values of "comparable vehicles" to arrive at a "Base Vehicle Value," which is then adjusted to account for the observed condition of Plaintiff's vehicle to arrive at ACV. Exhibit 2, p. 2.

110.   Plaintiff only challenges the deduction of the comp vehicle condition adjustment to reduce the price of the comparable vehicles and ultimately lower the calculated Base Vehicle Value.

111.   The Valuation Report states that the adjustments it takes on the comparable vehicles are "made to reflect differences in vehicle attributes, including mileage and options," which is at best a fraudulent half-truth because the comp vehicle condition adjustment does not reflect the actual attributes of the comp vehicles, which are never inspected. Exhibit 2 at p. 2.

112.   The section of the Valuation Report that purportedly explains the valuation methodology (Exhibit 2 p. 2) does not indicate that the value of the

comparable vehicles is also lowered through the arbitrary comp vehicle "condition adjustment."

113.   The comp vehicle condition adjustment is not a proper deduction for either "deprecation" or "betterment" under a reasonable interpretation of those terms and is inconsistent with a reasonable insured's understanding of how depreciation and betterment are defined.

114.   The CCC valuation methodology, with the improper comp vehicle condition adjustment removed and backed out of the calculation, yields an accurate measure of ACV.

115.   The amount of the comp vehicle condition adjustment can be identified for every member of the Class from Defendant's business records and data, including the data used to create the "Market Valuation Report" for the class members' vehicles.

116.   This lawsuit seeks a determination of the coverage, the scope and interpretation of the Policy, and a declaration (including under Ohio Civ. R. 57 and Ohio Revised Code Chapter 2721) that Defendant improperly calculated "actual cash value" in breach of the Policy; the condition adjustment is a breach of the Policy; is contrary to Ohio law, including but not limited to *Davis v. Geico Casualty Co.,* 659 F.Supp.3d 843 (S.D. Ohio 2023)(granting summary judgment to policyholder class because ACV payment for the cost to acquire replacement car

must include all costs and if the insurance company wanted to exclude them it was required to say so in the policy), is an improper, unlawful deduction, in a discrete and identifiable amount, taken by Defendant, and is an injury in fact and a direct and concrete harm to Plaintiff and each member of the proposed class.

## XI.    CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

117.    Plaintiff repeats and re-alleges each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

118.    Plaintiff and the Class Members contracted for insurance coverage on their listed vehicles, including first party coverage for damage to those vehicles.

119.    Plaintiff and the Class Members satisfied all duties and conditions owed under those contracts, or same were waived.

120.    Defendant's deduction of the comp vehicle condition adjustment from the value of the comps results in Defendant not paying ACV as required by the Policy, and results in a breach of the policy contract by Defendant.

121.    Defendant breached the contract with Plaintiff and each Class Member in the same way and the damages suffered by each can be determined in the same manner on a class-wide basis.

122.    Defendant breached the contract because, while the contract required Defendant to pay the ACV of a total loss vehicle, minus deductible, Defendant did

not pay ACV minus deductible, but a lesser amount due to deduction of the improper comp vehicle condition adjustment.

123.   The comp vehicle condition adjustment is inconsistent with a reasonable interpretation of the terms "depreciation" and "betterment" in the policy.

124.   The Ohio insurance regulations, Ohio Administrative Code 3901-1-54, are incorporated in and are part of the insurance policy issued by Defendant, and are cited by Defendant in the CCC Valuation Report as governing the ACV calculation. (Exhibit 2, p. 15).

125.   The Ohio Administrative Code provides: "In settlement of claimants' automobile total losses on the basis of actual cash value …, an insurer which elects to offer a cash settlement to claimant shall base the offer upon *the actual cost to purchase a comparable automobile* less any applicable deductible amount contained in the policy, and/or deduction for betterment as contained in paragraph (H)(2) of this rule." OAC § 3901-1-54(H)(7) (emphasis added).

126.   OAC § 3901-1-54(H)(2) provides: "If an insurer reduces a claim amount because of betterment …, it shall maintain all information pertaining to the reduction in the claim file. *Such deductions shall be itemized and specified* on the written estimate as to dollar amount and shall be appropriate for the amount of deductions." (emphasis added).

127. The comp vehicle condition adjustment is not itemized and specified on the CCC valuation report and is not an appropriate betterment deduction because betterment must be detailed and there is no detail concerning the condition of the comp vehicles.

128. The relevant Ohio regulations require a detailed analysis of why the comp vehicles were in better condition than "Average Private" condition. Having never inspected the comp vehicles, Defendants could not provide that analysis.

129. This suit seeks an interpretation of the contract, in light of the Ohio insurance regulations incorporated into the contract, and relief from the breach alleged herein.

## COUNT II
### (Implied covenant of good faith and fair dealing)

130. Plaintiff repeats and re-alleges each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

131. Defendant also breached the implied covenant of good faith and fair dealing in the insurance contract with Plaintiff and the proposed Class members.

132. In Ohio, "[e]very contract, no less in insurance or consumer transactions, has an implied covenant of good faith and fair dealing to it." *Jokic v. State Auto. Mut. Ins. Co.,* 2005-Ohio-7044, 2005 Ohio App. LEXIS 6359, ¶ 34 (Dec. 29, 2005) (citation omitted), *appeal denied* 110 Ohio St. 3d 1438 (2006).

27

133.   Put another way, this is "an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Lucarelli v. Farmers Mut. Ins. Co.*, 152 Ohio St. 3d 453, ¶ 42 (2018) (quotation omitted).

134.   Defendant chose to apply the comp vehicle condition adjustment to lower its ACV payments even though that deduction is inconsistent with a reasonable interpretation of the policy terms.

135.   Defendant likewise did not provide for, or even mention in the insurance policies, the use of the comp vehicle condition adjustment to lower the ACV payment made to its policyholders.

136.   Defendant is more skilled in these matters than its insureds, and thereby has an unfair advantage over its insureds.

137.   Defendant had a duty to act reasonably, and to refrain from taking unfair advantage of its customers, when determining ACV.

138.   By doing the opposite, and applying the comp vehicle condition adjustment not supported by the Policy or a reasonable interpretation of its terms, not consistent with Ohio law, and which is solely the product of Defendant's unlawful distortion of the comp vehicle valuation methodology, and by doing the

foregoing with the purpose of paying insureds less than would have been paid but-for this activity, Defendant breached the covenant of good faith and fair dealing.

## COUNT III
### (Unjust Enrichment)

139. Plaintiff repeats and re-alleges each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

140. Count III is brought in the alternative to count I, as permitted by Ohio law.

141. Defendant benefits financially by using the challenged comp vehicle condition adjustment.

142. When Defendant paid Plaintiff and the proposed Class Members less than ACV, they conferred a benefit upon Defendant, and Defendant knowingly received and accepted that benefit.

143. Defendant was aware of that benefit when it received it.

144. Using the balance of the equities, it would be unjust for Defendant to retain that benefit.

145. By retaining that benefit, Defendant was unjustly enriched and obtained ill-gotten gains, inter alia by using an improper deduction and paying less than it owed for the ACV of Plaintiff's total loss vehicle.

146. As a direct and proximate result of the foregoing, Plaintiff and the proposed Class Members were harmed, and Defendant should be required to

29

disgorge all of its ill-gotten gains in the amounts it underpaid through deduction of the comp vehicle condition adjustment.

## COUNT IV
### (Fraud by Present Intent Not to Perform)

147.   Plaintiff repeats and re-alleges each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

148.   When Defendant entered into the policies with Plaintiff and the Class Members, which required payment of ACV less deductible for total losses, Defendant had the present intent not to perform that obligation.

149.   Instead, Defendant intended at the time to improperly reduce the payment by deducting the comp vehicle condition adjustment, which was not mentioned in the Policy, not provided by the Policy, and not identified in the Policy as any aspect of calculating ACV.

150.   As a direct and proximate result of the foregoing, Plaintiff and the Class Members were damaged and harmed in the amount of the reduction of their payment by the improper deduction; but also, and in addition to their losses typical for breach of contract, they suffered costs and expenses incurred by them; attorney fees; and are further entitled to recover such damage, costs, attorney fees, and compensatory and punitive damages from the Defendant in an amount determined at trial, as a result of the fraud.

## COUNT V
## (Fraud)

151.    Plaintiff repeats and re-alleges each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

152.    Defendant fraudulently misled its customers into believing that the comp vehicle condition adjustment was legitimate by failing to disclose that it was based on assumptions instead of an actual inspection of the comp vehicle.

153.    The CCC valuation report provided to Plaintiff contained only one vague description of the comp vehicle condition adjustment: "The Condition Adjustment sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section." (Exhibit 2 pp. 9-10).

154.    Defendant provided no explanation of what "sets" means, or how the adjustment is derived. And by referring to the "Vehicle Condition" section, where the actual condition of the loss vehicle is described in detail based on an actual inspection, Defendant created the misimpression that a similar process was used for the comp vehicles.

155.    Defendant knew at the time it sent the report to Plaintiff that the comp vehicles were not inspected and that the comp vehicle condition adjustment is nothing like that loss vehicle condition adjustment, but it created the misimpression that they were the same.

156.    By this sleight of hand Defendant fraudulently concealed the true nature of the improper comp vehicle condition adjustment, and induced Plaintiff and the class members to accept the improper comp vehicle condition adjustment without complaint.

157.    Defendant fraudulently concealed the fact that the condition adjustment made to the comparable vehicles was not based on an actual inspection of those vehicles and comparison to the loss vehicle.

158.    Nowhere in the CCC reports it sent to Plaintiff and the Class does Defendant admit the truth – that it never inspected the comp vehicles and never compared their actual condition to either Plaintiff's vehicle or "Average Private" condition.

159.    At the very least Defendant told a fraudulent half-truth in the CCC report when it claimed that the condition adjustment "sets" the comps to "Average Private" condition, because what was fraudulently left un-said is that no one ever looked at the comp vehicles to determine if any adjustment was required to any of them to "set" them to "Average Private" condition.

160.    Under Ohio law, a "statement which, while stating the truth so far as it goes, the maker of which knows or believes to be materially misleading because of his failure to state a qualifying matter, is a fraudulent misrepresentation." *Siebert v.*

*Lalich*, 8th Dist. No. 87272, 2006-Ohio-6274, ¶¶ 68-69; *Long v. Rice*, 11th Dist. No. 2012-A-0056, 2013-Ohio-2402,  ¶ 22.

161.   A "statement containing a half-truth may be as misleading as a statement wholly false. Thus, a statement which contains only those matters which are favorable and omits all reference to those which are unfavorable, is as much a false representation as if all the facts stated were untrue." *Steiner v. Roberts*, 131 N.E.2d 238, 242-243 (Ohio App. 8th Dist. 1955) (quoting CMT, 3 Rest. of the Law of Torts, Sec. 529).

162.   The "law of Ohio imposes a duty to make a full disclosure in these circumstances where such disclosure is necessary to dispel misleading impressions created by a partial revelation of the facts." *Klasa v. Rogers*, 8th Dist. No. 83374, 2004-Ohio-4490, ¶ 25, quoting *Alpern v. Purcell*, 11th Dist. No. 2863, 1981 WL 4437, *1 (Ohio  App. 1981).

163.   Here Defendant made statements in the CCC report that qualify as fraudulent half-truths and that created a misleading impression.

164.   Defendant stated that the comp vehicle condition adjustment "sets that comparable vehicle to Average Private condition," but neglected to mention that no one made any effort to determine if the comp vehicles weren't already in "Average Private" condition.

165.   This is particularly misleading in the context of the CCC report, because the detailed inspection and item by item adjustments made for the loss vehicle again would lead a reasonable person to believe that the comp vehicle condition adjustment was a result of the same process.

166.   At best the CCC report contains a fraudulent half-truth about the comp vehicle condition adjustment, creating a misleading impression. In this way Defendant concealed its improper comp vehicle condition adjustment from Plaintiff and the class members, and did so with the intent of misleading the Plaintiff and the Class into reliance.

167.   Plaintiff had no idea that Defendant was adjusting the comp vehicle acquisition cost not based on actual facts relating to the condition of the comp vehicles, but rather supposition and assumptions. And no customer would know how Defendant was deriving the comp vehicle condition adjustment because no details are provided in the CCC report.

168.   At least one court has recognized that "CCC's system of assuming all comparable vehicles are in a better condition than average private condition and uniformly applying negative condition adjustments likely misleads consumers given Defendants' reliance on the valuation reports in purporting to pay Plaintiffs actual cash value for their vehicles." *See v. Gov't Employees Ins. Co.,* No. 21-CV-00547 (PKC) (JMW), 2022 WL 2467695, *10 (E.D.N.Y. Mar. 22, 2022).

169.   Plaintiff and the Class Members were justified in relying thereon, and not expecting Defendant would engage in conduct designed to take an improper deduction, mentioned nowhere in the insurance policies.

170.   Defendant furthered its fraudulent scheme by including an appraisal provision in its policy, designed to frustrate and prevent Plaintiff and the putative class from exercising their right to judicial relief, by attempting to require an appraisal process that would cost Plaintiff and the putative class members nearly as much or more than the amount by which Defendant underpaid their ACV.

171.   An appraisal costs between $900 and $1,500, whereas Plaintiff's individual claim here is for $961.

172.   This negative value trap virtually guarantees that Defendant's insureds will be prevented from protecting their rights against Defendant's misconduct.

173.   As a direct and proximate result of the Defendant's actions, Defendant defrauded and/or proximately caused damage to Plaintiff and the Class Members.

174.   As a direct and proximate result of Defendant's fraudulent actions, Plaintiff and the Class Members have suffered and incurred, and continue to suffer and incur, damages, including the amount of the improper comp vehicle condition adjustment, deprivation of the use of that money when due, and attorney fees, interest and costs.

Electronically Filed 03/25/2024 10:53 / / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deeba Perkins, individually and on behalf of all others similarly situated, prays for a judgment against Defendants Geico Casualty Company and Government Employees Insurance Company, jointly and severally, as follows:

1.      For an Order certifying this Ohio-only Class, as defined herein, and appointing Plaintiff as Class Representative and below counsel to represent the Class as defined above;

2.      For injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class Members, and for a declaration, including pursuant to Ohio Civ. R. 57 and O.R.C. Chap. 2721, of the rights and responsibilities under the Policy and under law;

3.      For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined at trial;

4.      For an award of statutory damages and punitive damages, as allowed by law in an amount to be determined at trial;

5.      For an award of restitution or disgorgement, in an amount to be determined at trial;

36

6.     For an award of attorneys' fees, costs, and litigation expenses, as proper and as allowed by law;

7.     For pre- and post-judgment interest on all amounts awarded; and

8.     Such other and further relief in favor of Plaintiff and the Class Members as the Court may deem just and proper.

/s/ Patrick J. Perotti
Patrick J. Perotti, Esq. (#0005481)
Frank A. Bartela, Esq. (#0088128)
DWORKEN & BERNSTEIN CO., LPA
60 South Park Place
Painesville, OH 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: *pperotti@dworkenlaw.com*
          *fbartela@dworkenlaw.com*

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: *jderoche@garson.com*

Erik D. Peterson (PHV to be filed)
ERIK PETERSON LAW OFFICES, PSC
110 West Vine Street, Suite 300
Lexington, KY 40507
Phone: 800-614-1957
Email: *erik@eplo.law*

Counsel for Plaintiff and the Putative Class

Electronically Filed 03/25/2024 10:53 / / CV 24 994917 / Confirmation Nbr. 3122314 / CLTXT

## JURY DEMAND

Plaintiff hereby demands a trial by jury comprised of the maximum number of jurors allowed by law.

/s/ Patrick J. Perotti

Patrick J. Perotti, Esq. (#0005481)
*Counsel for Plaint₍ⱼf*

38

# EXHIBIT 1

[Company Logo]
[Company Address]
[Company Address]
[Company Phone Number]

# Ohio
# Family
# Automobile
# Insurance
# Policy

[Company Name]

A30OH (07-22)

## POLICY INDEX

Page

**SECTION I – LIABILITY COVERAGES..........................4**
**Your Protection Against Claims From Others**

Definitions
Losses We Will Pay For You Under Section I
Additional Payments We Will Make Under The
Liability Coverages
Exclusions: When Section I Does Not Apply
Persons Insured: Who Is Covered
Financial Responsibility Laws
Out Of State Insurance
Limits Of Liability
Other Insurance
Conditions
   Notice
   Two Or More Autos
   Assistance And Cooperation Of The Insured
   Action Against Us
   Subrogation

**SECTION II – AUTO MEDICAL PAYMENTS...................8**
**Protection For You And Your Passengers For Medical**
**Expenses**

Definitions
Payments We Will Make
Exclusions: When Section II Does Not Apply
Limit Of Liability
Other Insurance
Conditions
   Notice
   Two Or More Autos
   Action Against Us
   Medical Reports - Proof And Payment Of Claims
   Subrogation
   Non-Duplication

**SECTION III – PHYSICAL DAMAGE**
**COVERAGE................................................................10**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions
PART I - COMPREHENSIVE AND COLLISION
COVERAGE
Losses We Will Pay
   Comprehensive Coverage
   Collision Coverage
Additional Payments We Will Make Under The
Physical Damage Coverages
Exclusions: When The Physical Damage
Coverages Do Not Apply
Limit Of Liability
Other Insurance
Conditions
   Notice
   Two Or More Autos
   Assistance And Cooperation Of The Insured
   Action Against Us

Page

   Insured's Duties In Event Of Loss
   Appraisal
   Payment Of Loss
   No Benefit To Bailee
   Subrogation
   Assignment
PART II - EMERGENCY ROAD SERVICE COVERAGE
Losses We Will Pay
Exclusions
Obtaining Service Under This Coverage
PART III - RENTAL REIMBURSEMENT COVERAGE
PART IV - MECHANICAL BREAKDOWN PROTECTION
Definitions
Exclusions
Other Insurance
Conditions

**SECTION IV – UNINSURED AND UNDERINSURED**
**MOTORISTS BODILY INJURY COVERAGE &**
**UNINSURED MOTORISTS PROPERTY DAMAGE**
**COVERAGE....................................................................17**
**Protection For You And Your Passengers For**
**Injuries Caused By Uninsured And Hit And Run**
**Motorists & Protection For Damage To Your**
**Vehicle Caused By Uninsured Motorists**
PART I - UNINSURED AND UNDERINSURED
MOTORISTS BODILY INJURY COVERAGE
Definitions
Losses We Pay
Exclusions: When Section IV, Part I Does Not Apply
Limits Of Liability
Other Insurance
Arbitration
Trust Agreement
Conditions
   Notice
   Limitation on Claims
   Action Against Us
   Proof Of Claim - Medical Reports
   Payment Of Loss
PART II - UNINSURED MOTORISTS PROPERTY
DAMAGE COVERAGE
Definitions
Losses We Pay
Exclusions: When this Coverage Does Not Apply
Limit of Liability
Other Insurance
Trust Agreement
Conditions
   Notice
   Assistance and Cooperation of the Insured
   Action Against Us
   Proof of Claim
   Payment of Loss
   Limitations on Claims

**POLICY INDEX**

Page

**SECTION V – GENERAL CONDITIONS.......................24**
**These conditions apply to all Coverages in this policy**

Definitions
Territory
Premium
Changes
Assignment
Policy Period
Cancellation By The Insured
Cancellation By Us
Cancellation By Us Is Limited
Renewal
Other Insurance

Page

Dividend Provision
Declarations
Fraud And Misrepresentation
Examination Under Oath
Terms Of Policy Conformed To Statutes
Disposal of Vehicle
Choice of Law
Claim Adjustment Tools and Technology

**SECTION VI – AMENDMENTS AND**
**ENDORSEMENTS.........................................................26**

Special Endorsement
United States Government Employees

**AGREEMENT**

**We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

---

**SECTION I - LIABILITY COVERAGES**
**Your Protection Against Claims From Others**
**Bodily Injury Liability & Property Damage Liability**

---

**DEFINITIONS**

The words bolded and italicized in Section I of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease or death.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4. ***Insured*** means a person or organization described under **PERSONS INSURED**.

5. ***Non-owned auto*** means a ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** not owned by or furnished for the regular use of either ***you*** or ***your relative***, other than a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** within the scope of permission given by its owner. A ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** rented or leased for more than 30 days will be considered as furnished for regular use. Two or more ***private passenger autos***, ***farm autos***, ***utility autos*** or ***trailers*** consecutively rented or leased, one after the other, for more than 30 consecutive days will be considered as furnished for regular use.

6. ***Owned auto*** means:
   (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) a ***trailer*** owned by ***you***;
   (c) a ***private passenger auto***, ***farm auto*** or ***utility auto*** ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for a term of six months or more, if:
      (i) it replaces an ***owned auto*** as defined in (a) above; or
      (ii) we insure all ***private passenger autos***, ***farm autos*** and ***utility autos*** owned or leased by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;
   (d) a ***temporary substitute auto***.

7. ***Peer-to-peer vehicle sharing*** means the authorized use of a motor vehicle by an individual other than the motor vehicle's owner through a ***peer-to-peer vehicle sharing program***.

8. ***Peer-to-peer vehicle sharing program*** means a person who operates a business platform that connects a ***shared vehicle owner*** to a ***shared vehicle driver*** to enable the sharing of vehicles for financial consideration. ***Peer-to-peer vehicle sharing program*** does not include a motor vehicle leasing dealer as defined in section 4517.01 of the Revised Code or a motor vehicle renting dealer as defined in section 4549.65 of the Revised Code.

9. ***Peer-to-peer vehicle sharing program agreement*** means an agreement established through the ***peer-to-peer vehicle sharing program*** that serves as a contract between the ***peer-to-peer vehicle sharing program***, the ***shared vehicle owner***, and the ***shared vehicle driver*** and describes the specific terms and conditions of the agreement, including the ***vehicle sharing period*** and the location or locations for transfer of possession.

10. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.

11. ***Property damage*** means physical damage to, destruction of, or loss of use of, tangible property.

12. ***Relative*** means a person residing in the same household as ***you***, and related to ***you*** by blood, marriage or adoption, and includes a ward, stepchild, or foster child.

13. ***Ride-sharing*** means the use of any vehicle to provide transportation of persons in connection with a ***transportation network company*** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off, of any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s), including the time the user is on the way to pick up any passenger(s), or is transporting any passenger(s).

14. ***Shared vehicle*** means a personal motor vehicle that is registered as a passenger car under Chapter 4503. of the Revised Code or a substantially similar law in another state and that is enrolled in a ***peer-to-peer vehicle sharing program***.

15. ***Shared vehicle driver*** means a person authorized by a ***shared vehicle owner***, in accordance with the terms and conditions of a ***peer-to-peer vehicle sharing program agreement***, to operate a ***shared vehicle*** during a ***vehicle sharing period***.

16. **Shared vehicle owner** means a registered owner of a **shared vehicle** or a person designated by the registered owner.

17. **Temporary substitute auto** means an automobile or **trailer**, not owned by **you**, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the **owned auto** or **trailer** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

    A **temporary substitute auto** does not include:

    (a) any motor vehicle rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. A motor vehicle is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the motor vehicle to be used for **ride-sharing** with a **transportation network company**; or

    (b) any motor vehicle rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or

    (c) any motor vehicle rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or

    (d) any motor vehicle rented or leased by **you** or a **relative** which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

18. **Trailer** means a trailer designed to be towed by a **private passenger auto**, if not being used for business or commercial purposes with a vehicle other than a **private passenger auto**, **farm auto** or **utility auto**.

19. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

20. **Utility auto** means a vehicle, other than a **farm auto**, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

21. **Vehicle sharing delivery period** means the period of time in which a **shared vehicle** is being delivered to the location for the **shared vehicle driver** to take possession of the **shared vehicle**, in accordance with the **peer-to-peer vehicle sharing program agreement**.

22. **Vehicle sharing period** means the period of time that commences with the **vehicle sharing delivery period** or, if there is no **vehicle sharing delivery period**, with the **vehicle sharing start time**, in accordance with the **peer-to-peer vehicle sharing program agreement**, and ends with the **vehicle sharing termination time**.

23. **Vehicle sharing start time** means either the point in time when the **shared vehicle driver** takes possession of the **shared vehicle** or the point in time when the **shared vehicle driver** was scheduled to take possession of the **shared vehicle**, whichever occurs first.

24. **Vehicle sharing termination time** means the point in time when the earliest of the following events occurs:

    (1) The expiration time established in the **peer-to-peer vehicle sharing program agreement** for use of the **shared vehicle**, provided that the **shared vehicle** is returned to the location designated in the agreement by the expiration time;

    (2) The **shared vehicle** is returned to an alternate location, if the **shared vehicle owner** and the **shared vehicle driver** agree on the alternate location, as communicated through the **peer-to-peer vehicle sharing program**;

    (3) The **shared vehicle owner** or the owner's designee takes possession of the **shared vehicle**.

25. **War** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

26. **You** and **your** means only the individual(s) named in the **Declarations Page** as **Named Insured** and their spouse if a resident of the same household.

    **You** and **your** does not include any individual(s) named in the **Declarations Page** as:

    (a) **Additional Drivers;**
    (b) **Additional Driver;** or
    (c) any other individual(s).

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:

1. **bodily injury**, sustained by a person; or
2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.
2. All court costs charged to an **insured** in a covered lawsuit.
3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** or **non-owned auto**, not to exceed $250 per bail bond.

6. We will upon request by an **insured**, provide reimbursement for the following items:

    (a) Reasonable costs, up to $500, incurred when that **insured** provides and renders first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.

    (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.

    (c) All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1. We do not cover **bodily injury** to any **insured** or any **relative** of an **insured**. However, this exclusion does not apply to a claim asserted solely for the wrongful death of any **insured** or **relative** of any **insured**, pursuant to Chapter 2125 of the Ohio Revised Code.

2. Section I does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any motor vehicle while being used:

    (a) to carry persons or property for compensation or a fee, including but not limited to delivery of food or any other products; or

    (b) for **ride-sharing**.

    (c) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of newspapers or food.

    However, this exclusion does not apply to ordinary car pools. An ordinary car pool is one where:

        (i) An **insured** receives no payment for using a vehicle for a car pool ride; or

        (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

3. **Bodily injury** or **property damage** caused intentionally by or at the direction of an **insured** is not covered.

4. We do not cover **bodily injury** or **property damage** that is insured under a nuclear liability policy.

5. **Bodily injury** or **property damage** arising from the operation of farm machinery is not covered.

6. **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered. However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

7. We do not cover **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend **you** if suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you**.

8. We do not cover an **owned auto** while used by a person (other than **you** or a **relative**) when they are employed or otherwise engaged in the **auto business**.

9. A **non-owned auto** while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any **auto business** if the accident arises out of that business; (2) any other business or occupation of any **insured**, if the accident arises out of that business or occupation, except a **private passenger auto** used by **you** or **your** chauffeur or domestic worker while engaged in such other business.

10. We do not cover damage to:

    (a) property owned, operated, transported or used by an **insured**; or

    (b) property rented to or in the care, custody or control of an **insured** other than a residence or private garage.

11. We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

12. We do not cover:

    (a) the United States of America or any of its agencies;

    (b) any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

13. Section I does not apply to:

    (a) **bodily injury** or **property damage** caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or

    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

14. We do not cover any liability assumed under any contract or agreement.

15. We do not cover punitive or exemplary damages recovered or potentially recoverable from any *insured*.
16. We do not cover attorney fees or litigation costs or expenses awarded against or recoverable from an *insured* except all court costs charged to an *insured* in a covered lawsuit.
17. *Bodily injury* or *property damage* due to the discharge of a weapon or the throwing or ejecting of any projectile is not covered.
18. An order of restitution awarded in a criminal proceeding or equitable action is not covered.
19. We do not cover *bodily injury* or *property damage* while an *owned auto* is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used in *peer-to-peer vehicle sharing* during the *vehicle sharing period*.
    This exclusion does not apply to the operation of a *temporary substitute auto* by *you*, a *relative* or any other person with *your* permission, if the actual use of the *temporary substitute auto* is within the scope of that permission and such person is not insured by any other vehicle liability insurance policy, a self-insurance liability program, or a liability bond.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *you* and *your relatives*;
2. any other person who is using the auto with *your* permission but only if such person is not insured by any other vehicle liability insurance policy, a self-insurance liability program, or a liability bond while using the auto. The actual use must be within the scope of that permission.
   However, if this policy is certified as proof of financial responsibility, then Section I applies to any other person using the auto with *your* permission. The actual use must be within the scope of that  permission;
3. any other person or organization for their or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *you*;
   (b) *your relatives* when using a *private passenger auto*, *farm auto*, *utility auto* or *trailer*.
   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;
2. a person or organization, not owning or hiring the auto, regarding their or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

Any insurance we provide for a vehicle that is not an *owned auto* is excess over any other collectible insurance, self-insurance, or bond.

If the *insured* has other applicable excess liability insurance, self-insurance, or bond for an accident covered by Section I of this policy, we will pay only our share of the damages. Our  share of the damages is the proportion that our Limit of Liability bears to the total of all applicable excess liability insurance, self-insurance, or bonds.

As to an **owned auto**, if the **insured** has other applicable liability insurance, self-insurance, or bond for an accident covered by Section I of this policy, we will pay only our share of the damages. Our share of the damages is the proportion that our Limit of Liability bears to the total of all applicable limits of liability insurance, self-insurance, or bonds. However, any insurance we provide for the use of an **owned auto** by any person other than **you** is excess over any other collectible insurance, self-insurance, or bond.

**CONDITIONS**

The following conditions apply to Section I:

1.  NOTICE
    As soon as possible after an occurrence, notice must be given to us or our authorized agent stating:
    (a) the identity of the **insured**;
    (b) the time, place and details of the occurrence;
    (c) the names and addresses of the injured, and of any witnesses; and
    (d) the names of the owners and the description and location of any damaged property.
        If a claim or suit is brought against an **insured**, they must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS
    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE INSURED
    The **insured** will cooperate and assist us, if requested:
    (a) in the investigation of the occurrence;
    (b) in making settlements;
    (c) in the conduct of suits;
    (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of **bodily injury** or **property damage**;
    (e) at trials and hearings;
    (f) in securing and giving evidence; and
    (g) by obtaining the attendance of witnesses.
    Only at their own cost will the **insured** make a payment, assume any obligation or incur any cost other than for first aid to others.

4.  ACTION AGAINST US
    No suit will lie against us:
    (a) unless the **insured** has fully complied with all the policy's terms and conditions, and
    (b) until the amount of the **insured's** obligation to pay has been finally determined, either:
        (i)  by a final judgment against the **insured** after actual trial; or
        (ii) by written agreement of the **insured**, the claimant and us.
    A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.
    No person or organization, including the **insured**, has a right under this policy to make us a defendant in an action to determine the **insured's** liability.
    Bankruptcy or insolvency of the **insured** or their estate will not relieve us of our obligations.

5.  SUBROGATION
    When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery against others. The **insured** will help us to enforce these rights. The **insured** will do nothing after **loss** to prejudice these rights. This means we will have the right to sue for or otherwise recover the **loss** from anyone else who may be held responsible.

---

## SECTION II - AUTO MEDICAL PAYMENTS
### Protection For You And Your Passengers For Medical Expenses

---

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, **occupying** and **occupied** means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an **insured** within one year from the date of accident for necessary: medical services, surgical services, x-ray services, dental services, prosthetic devices, ambulance services, hospital services, professional nursing services and funeral services. The one year limit does not apply to funeral services. In addition, these expenses shall be submitted for payment within two years from the date of the accident.

This Coverage applies to:

1. **you** and each **relative** who sustains **bodily injury** caused by accident:
   (a) while **occupying** the **owned auto**; or
   (b) while **occupying** a **non-owned auto** if **you** or **your relative** reasonably believe **you** have the owner's permission to use the auto and the use is within the scope of that permission; or
   (c) when struck as a pedestrian by an auto or **trailer**.
2. any other person who sustains **bodily injury** caused by accident while **occupying** the **owned auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission.

## EXCLUSIONS

### When Section II Does Not Apply

1. There is no coverage for **bodily injury** arising out of the ownership, maintenance, or use of any motor vehicle while being used:
   (a) to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) for **ride-sharing**.
   (c) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of newspapers or food.
   This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle. Further, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:
   (i) An **insured** receives no payment for using a vehicle for a car pool ride; or
   (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
2. There is no coverage for an **insured** while **occupying** a vehicle located for use as a residence or premises.
3. **You** and **your relatives** are not covered for **bodily injury** sustained while **occupying** or when struck by:
   (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
   (b) a vehicle operated on rails or crawler-treads.
4. There is no coverage for persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.
5. There is no coverage for **bodily injury** sustained due to **war**.
6. The United States of America or any of its agencies are not covered as an **insured**, a third party beneficiary, or otherwise.
7. Section II does not apply to:
   (a) **bodily injury** caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
8. There is no coverage for **bodily injury** while an **owned auto** is leased or rented to others or given in exchange for any compensation, including while used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. When a **temporary substitute auto** is **occupied** by **you** or a **relative**, or while any person is **occupying** the **temporary substitute auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission, this exclusion does not apply. The actual use of the **temporary substitute auto** must be within the scope of that permission.
9. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying**, or when struck as a pedestrian by any vehicle leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
10. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying**, or when struck as a pedestrian by any vehicle regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations is the limit we will pay for all costs incurred by or on behalf of each person who sustains **bodily injury** in one accident. This applies regardless of the number of persons insured or the number of autos or **trailers** to which this policy applies.

## OTHER INSURANCE

If the **insured** has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to this Coverage:

1. NOTICE
   As soon as possible after an accident, notice must be given to us or our authorized agent stating:
   (a) the identity of the *insured*;
   (b) the time, place and details of the accident; and
   (c) the names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS
   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ACTION AGAINST US
   Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS
   As soon as possible, the injured person or their representative will furnish us with written proof of claim, under oath if required. After each request from us, they will give us written authority to obtain medical reports and copies of records. The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.
   We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

5. SUBROGATION
   When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

6. NON-DUPLICATION
   No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and under the Uninsured and Underinsured Motorists Coverage section of this policy.

---

### SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

---

**DEFINITIONS**

The definitions of the terms *auto business*, *farm auto*, *non-owned auto*, *peer-to-peer vehicle sharing*, *peer-to-peer vehicle sharing program*, *peer-to-peer vehicle sharing program agreement*, *private passenger auto*, *relative*, *ride-sharing*, *shared vehicle*, *shared vehicle driver*, *shared vehicle owner*, *temporary substitute auto*, *transportation network company*, *utility auto*, *vehicle sharing delivery period*, *vehicle sharing period*, *vehicle sharing start time*, *vehicle sharing termination time*, *war*, *you*, and *your* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *Actual cash value* is determined by the market value, age, and condition of the vehicle or property at the time the *loss* occurs less *depreciation* or *betterment*.

2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

3. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   (a) are permanently installed or attached; or
   (b) alter the appearance or performance of a vehicle;
   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

6. *Insured* means:
   (a) regarding the *owned auto*:
       (i) *you* and *your relatives*;
       (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if their use is within the scope of that permission.

(b) regarding a **non-owned auto**; **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. **Loss** means direct and accidental loss of or damage to the auto, including its equipment.

8. **Owned auto** means:
   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) a **private passenger auto**, **farm auto**, **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more; if
      (i) it replaces an **owned auto** as described in (a) above, or
      (ii) we insure all **private passenger autos**, **farm autos**, **utility autos** and **trailers** owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) a **temporary substitute auto**.

9. **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.


## PART I - COMPREHENSIVE AND COLLISION COVERAGE

Comprehensive Coverage for the vehicle involved in the  **loss** applies only when a premium is shown on the **Declarations Page** for Comprehensive Coverage for that vehicle.

Collision Coverage for the vehicle involved in the  **loss** applies only when a premium is shown on the **Declarations Page** for Collision Coverage for that vehicle.

With respect to coverage provided by this  **PART**, the provisions of the policy apply unless modified by this  **PART**.

**LOSSES WE WILL PAY FOR YOU**

**Comprehensive (Excluding Collision)**

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes breakage of glass and **loss** caused by:

| | |
|---|---|
| (a) Missiles; | (j)  Windstorm; |
| (b) Falling objects; | (k)  Hail; |
| (c) Fire; | (l)  Water; |
| (d) Lightning; | (m) Flood; |
| (e) Theft; | (n)  Malicious mischief; |
| (f) Larceny; | (o)  Vandalism; |
| (g) Explosion; | (p)  Riot; or |
| (h) Earthquake; | (q)  Civil commotion. |
| (i) Colliding with a bird or animal; | |

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision Coverage, if included in the policy.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**. Reimbursement will not exceed $25 per day, or $750 per **loss**.

2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

1. There is no coverage for any motor vehicle while being used:
   (a) to carry persons or property for compensation or a fee, including but not limited to delivery of food or other products; or
   (b) for **ride-sharing**.
   (c) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of newspapers or food.

However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

(i) An **insured** receives no payment for using a vehicle for a car pool ride; or

(ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

2. **Loss** due to **war** is not covered.

3. We do not cover **loss** to a **non-owned auto** when used by the **insured** in the **auto business**.

4. There is no coverage for **loss** caused by and limited to wear and tear, freezing, mechanical, electrical, or electronic breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by **collision**, are not covered.

6. **Loss** due to radioactivity is not covered.

7. Section III does not apply to portable equipment, devices, accessories, and any other personal effects that are not permanently installed.
   This includes, but is not limited to:
   (a) tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   (b) any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   (c) any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   (d) CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions.

8. We do not cover **trailers** when used for business or commercial purposes with vehicles other than **private passenger autos**, **farm autos** or **utility autos**.

9. We do not cover **loss** for **custom parts or equipment**, in excess of $1000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

10. Section III does not apply to any **loss** caused by:
    (a) a motor vehicle driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

11. There is no coverage for any liability assumed under any contract or agreement.

12. There is no coverage for **loss** or damage resulting from:
    (a) the acquisition of a stolen vehicle;
    (b) any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) the sale of an **owned auto**.

13. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by **you**, a **relative** or a permissive user of the vehicle in illegal activity.

14. We do not cover an **owned auto** while leased or rented to others or given in exchange for any compensation, including while used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**.
    This exclusion does not apply to a **temporary substitute auto** operated by **you** or a **relative**, or while a person or organization is maintaining, using or having custody of the **temporary substitute auto** with **your** permission, if the use is within the scope of that permission.

15. To any damage arising out of, resulting from, caused by or attributed to electromagnetic radiation including but not limited to electromagnetic radiation caused by solar flare, solar wind, solar radiation, solar activity, solar phenomena, solar storm, magnetic storm or magnetic field.

16. Section III does not apply to any vehicle, or series of vehicles, leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

17. Section III does not apply to any vehicle, or series of vehicles, regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMIT OF LIABILITY**

The limit of our liability for **loss**:

1. is the **actual cash value** of the property at the time of the **loss**;

2.  for the repair of the damaged property, will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3.  to a *trailer* not owned by *you* is $500;

4.  for *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

    *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage Coverages:

1.  NOTICE

    As soon as possible after a *loss*, notice must be given to us or our authorized agent stating:

    (a)  the identity of the *insured*;

    (b)  a description of the auto or *trailer*;

    (c)  the time, place and details of the *loss*; and

    (d)  the names and addresses of any witnesses.

    In case of theft, the *insured* must promptly notify the police. In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the police investigation, with the claim investigation, and with the prosecution of any person(s) charged with theft and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.

2.  TWO OR MORE AUTOS

    If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3.  ASSISTANCE AND COOPERATION OF THE INSURED

    The *insured* will cooperate and assist us, if requested:

    (a)  in the investigation of the *loss*;

    (b)  in making settlements;

    (c)  in the conduct of suits;

    (d)  in enforcing any right of subrogation against any legally responsible person or organization;

    (e)  at trials and hearings;

    (f)  in securing and giving evidence; and

    (g)  by obtaining the attendance of witnesses.

4.  ACTION AGAINST US

    Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

    If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

5.  INSURED'S DUTIES IN EVENT OF LOSS

    In the event of *loss* the *insured* will:

    (a)  Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

    (b)  File with us, within 91 days after *loss*, their sworn proof of loss including all information we may reasonably require.

    (c)  At our request, the *insured* will exhibit the damaged property.

6.  APPRAISAL

    If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The

appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay their chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF LOSS

We may at our option:

(a) pay for the *loss*; or

(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights. This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

10. ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.


## PART II - EMERGENCY ROAD SERVICE COVERAGE

Emergency Road Service Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Emergency Road Service for that vehicle.

With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.

### LOSSES WE WILL PAY

**Emergency Road Service Coverage**

If an *owned auto* or *non-owned auto* becomes disabled, we will determine and pay reasonable and customary expenses an *insured* incurs for the following:

1. Battery jump start or labor to install a new battery purchased at the *insured's* expense, performed where the *owned auto* or *non-owned auto* became disabled;
2. Lockout services up to $100 per lockout if keys to the *owned auto* or *non-owned auto* are lost, broken or accidentally locked in the *owned auto* or *non-owned auto*. Lockout services does not include the cost to repair, replace, or reprogram any lost, stolen or damaged electronic or digital keys, including, but not limited to, key fobs;
3. Towing from where the *owned auto* or *non-owned auto* became disabled to the **nearest** repair facility where the necessary repairs can be made as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
4. Winching the *owned auto* or *non-owned auto* as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
5. Delivery of gas. WE DO NOT PAY FOR THE COST OF THE GAS;
6. Changing a flat tire with the *insured's* operable spare at the location where the *owned auto* or *non-owned auto* became disabled.

### EXCLUSIONS

The following additional exclusions apply under this coverage:

We will not provide coverage under **Part II - Emergency Road Service Coverage** for:

1. more than one reimbursement per disablement;
2. more than three (3) covered emergencies for any single covered auto during the policy period;
3. the cost of gas, oil, batteries, or tire(s);
4. the delivery of air, inflation of a tire(s), or patching of a tire(s);
5. the costs of replacement keys, or the labor to make replacement keys;
6. any parts, labor, fluids or other materials or charges necessary for the completion of any repair;

7.   installation of products or material not related to the disablement;
8.   mounting or removing of snow tires or chains;
9.   any repairs, labor or towing not specifically listed under **LOSSES WE WILL PAY - Emergency Road Service Coverage**;
10.  any vehicle:
     (a)  driven off established roads;
     (b)  driven in areas not designed for private passenger automobile traffic;
     (c)  disabled and/or stuck due to participation in and/or preparation for driving a vehicle through a pit of mud or on a mud track, whether or not prearranged or organized; or
     (d)  disabled and/or stuck intentionally by any *insured*;
11.  any vehicle arising from impoundment or abandonment;
12.  any vehicle illegally parked or associated with illegal activity;
13.  auto storage charges;
14.  any covered auto while being used in connection with *ride-sharing* activity;
15.  any covered auto while being used in connection with a *peer-to-peer vehicle sharing program*.
     However, this shall not apply when a covered auto is being used by *you* or a *relative*.

**OBTAINING SERVICE**
*You* may secure service under this coverage for **Emergency Road Service Coverage** in the following manner:
   **SIGN AND DRIVE**
   The first method, called sign and drive, allows the *insured* to contact GEICO Emergency Road Service via its mobile app or a toll-free number to initiate the dispatch of a service vendor. Upon verification of Emergency Road Service
   (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any charges, expenses or other fees not specifically addressed above in **LOSSES WE WILL PAY**, or lockout services in excess of $100, are not covered and are at the *insured's* own expense.
   If we are unable to locate and dispatch a service vendor to an *insured* and the *insured* hires services without the assistance of a GEICO Emergency Road Service representative, we will reimburse an *insured* only as addressed above in **LOSSES WE WILL PAY**.
   **HIRED SERVICES**
   The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $100 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

**CONTINUATION OF COVERAGE**
Upon each renewal period, we reserve the right to review the continuation of the ERS coverage. Removal of the ERS coverage from the policy is subject to underwriting review process at each renewal. All vehicles listed on the policy with the ERS coverage are subject to this review.


**PART III - RENTAL REIMBURSEMENT COVERAGE**
Rental Reimbursement Coverage for the vehicle involved in the loss applies only when a premium is shown on the **Declarations Page** for Rental Reimbursement Coverage for that vehicle.
With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.
When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:
We will reimburse the *insured* toward costs the *insured* incurs to rent an auto.
Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:
   1.  The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
   2.  The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.
When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:
   1.  This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and

2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III, Part I of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III, Part I of the policy. In that event, the amount payable under this coverage is the amount by which this coverage exceeds those described in Section III, Part I of the policy; and

3. Subject to number 2. above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this coverage.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*;
2. Repaired;
3. Replaced; or
4. Deemed a total loss by us:
   (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III, Part I; or
   (b) Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an *owned auto*, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to *you* or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the *actual cash value* of the *owned auto*.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us. No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the *loss*.

This coverage is subject to all the provisions and conditions of Section III, Part I of the policy.


**PART IV - MECHANICAL BREAKDOWN PROTECTION**

Mechanical Breakdown Protection Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Mechanical Breakdown Protection Coverage for that vehicle.

With respect to coverage provided by this **PART**, the provisions of **PART I** and the policy apply unless modified by this **PART**.

This Coverage is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy Declarations shall apply to each *loss* under the Mechanical Breakdown Coverage. A $50 deductible shall apply to glass breakage without any other damage to the auto, unless *you* carry comprehensive coverage without a deductible.

**MECHANICAL BREAKDOWN PROTECTION**

We will pay for *loss* caused other than by *collision* or under the comprehensive coverage due to the mechanical breakdown of the *owned auto*. *Losses* from mechanical breakdown shall not be accumulated to reach the deductible.

**DEFINITIONS**

For the purposes of this coverage, the following special definitions apply with respect to mechanical breakdown protection only:

*Loss* means all risk of physical damage to the *owned auto* or its equipment.

*Owned auto* means any vehicle described in the policy Declarations for which a specific premium charge indicates there is coverage for mechanical breakdown. *Owned auto* does not include:

a) a newly acquired vehicle;
b) a replacement vehicle; or
c) a *temporary substitute auto*.

**EXCLUSIONS**

For the purposes of this coverage only, with respect to mechanical breakdown protection, exclusion **4.** is deleted.

The following exclusions are added:

A. Oxidation and rust damage are not covered.
B. Damage caused intentionally by *you* or any other person using an *owned auto* with your permission is not covered.
C. *Loss* due to misuse, alteration, or **lack of proper maintenance** is not covered. **Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual or recommended by the manufacturer.
D. Tire wear or other tire damage is not covered.
E. Normal wear and tear is not covered.

F.  Routine maintenance services and parts are not covered. This includes; but is not limited to:
    a)  engine tune up;
    b)  suspension alignment;
    c)  wheel balancing;
    d)  filters;
    e)  lubrication;
    f)  engine coolant;
    g)  fluids;
    h)  spark or glow plugs;
    i)  brake pads;
    j)  brake linings; and
    k)  brake shoes.
G.  Any **loss** to the extent covered by warranty, recall or voluntary repair programs is not covered.
H.  Any **loss** to a **non-owned auto** or to a **temporary substitute auto** is not covered.
I.  Any **loss** to a newly acquired or replacement auto is not covered.
J.  Any pre-existing **loss** or damage to any insured auto is not covered.
K.  This coverage will terminate either when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever occurs earlier. The 7 year stipulation will only apply to vehicles  that are 1996 model year and later.

**OTHER INSURANCE**
For the purposes of this coverage only, if **you** have other insurance against a **loss** covered by mechanical breakdown protection, this policy will apply as excess insurance over such other valid and collectible insurance.

**CONDITIONS**
For the purposes of this coverage only, the following condition is revised with respect to mechanical breakdown protection:
Item e) is added to Condition 1. NOTICE:
    e) the location of the **owned auto**.
The following condition is added with respect to mechanical breakdown protection:
For this coverage to be applicable, repairs may not be  undertaken prior to obtaining authorization from us.

---

### SECTION IV - UNINSURED AND UNDERINSURED MOTORISTS BODILY INJURY COVERAGE & UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE
**Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists & Protection For Damage To Your Vehicle Caused By Uninsured Motorists**

---

**PART I - UNINSURED AND UNDERINSURED MOTORISTS BODILY INJURY COVERAGE**
This policy provides Uninsured Motorists Bodily Injury Coverage if Uninsured Motorists Bodily Injury is listed on  **your Declarations Page** and a premium is listed for Uninsured Motorists Bodily Injury.
This policy provides Underinsured Motorist Coverage if Underinsured Motorist is listed on  **your Declarations Page** and a premium is listed for Underinsured Motorist.

**DEFINITIONS**
The definitions of terms for Section I apply to Section IV, Part I, except for the following special definitions:
1.  **Bodily injury** means bodily injury to **you**, including resulting sickness, disease or death.
2.  **Hit-and-run motor vehicle** means a motor vehicle that causes **bodily injury** to an **insured**, provided:
    (a)  the identity of the owner and operator of the motor vehicle cannot be determined;
    (b)  there is independent corroborative evidence, other than the testimony of an  **insured**, that the **bodily injury** was caused by the unidentified operator of the motor vehicle;
    (c)  the **insured** or someone on their behalf reports the accident as a hit and run accident to a police, peace, or judicial officer or to the commissioner of motor vehicles within 24 hours of the accident;
    (d)  we are notified under oath within 30 days of the accident and that a **hit-and-run motor vehicle** was responsible; and
    (e)  at our request, **you** or **your** legal representative makes the auto which the **insured** was **occupying** at the time of the accident available for our inspection.
3.  **Insured** means:
    (a)  **you** and **your** spouse if a resident of the same household;
    (b)  **your relatives**;
    (c)  any other person **occupying** an **owned auto** with **your** permission, but only if such person is not insured for uninsured or underinsured motorists coverage under another policy;
    (d)  any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under (a), (b) or (c) above.

Electronically Filed 03/25/2024 15:03 / / CV 24 994910 / Confirmation Nbr. 3122314 / CLTXT

4. **Insured auto** is an auto:
   (a) described in the Declarations or covered by the bodily injury liability coverage of this policy;
   (b) temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
   (c) operated by **you** or **your** spouse if a resident of the same household.
   But the term **insured auto** does not include:
   (i) an auto used to carry passengers or goods for hire, except in a car pool;
   (ii) an auto being used without the owner's permission; or
   (iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an **insured**.

5. **Occupying** means in, upon, entering into or alighting from.

6. **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7. **Uninsured motor vehicle** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.
   The term **uninsured motor vehicle** does not include:
   (a) an **insured auto**;
   (b) a motor vehicle owned or operated by a self-insurer within the meaning of any motor vehicle  financial responsibility law, motor carrier law or any similar law of the **state** in which the motor vehicle is registered;
   (c) a motor vehicle owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or  its agencies;
   (d) a land motor vehicle or trailer operated on rails or crawler-treads or located for use as a residence or  premises;
   (e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads;
   (f) a motor vehicle owned by, furnished to, or available for the regular use of  **you**, a spouse, or a resident **relative** of **you**; or
   (g) a trolley, streetcar, **trailer**, railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home.

8. **Underinsured motor vehicle** means a motor vehicle on which the limits of coverage available for payment to the **insured** under all bodily injury liability bonds and insurance policies covering persons liable to the  **insured** are less than the limits for the Underinsured Motorists Coverage at the time of the accident.
   The term **underinsured motor vehicle** does not include any vehicle or equipment:
   (a) which is an **insured auto**;
   (b) owned or operated by a self-insurer under any applicable motor vehicle law;
   (c) a motor vehicle owned by the United States of America, any other national government, a **state**, or a political sub- division of any such government or its agencies;
   (d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises;
   (e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads;
   (f) which is an **uninsured motor vehicle** ;
   (g) a motor vehicle owned by, furnished to, or available for the regular use of  **you**, a spouse, or a resident **relative** of **you**; or
   (h) a trolley, streetcar, **trailer**, railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home.

**LOSSES WE PAY**

Under the Uninsured and Underinsured Motorists Coverage we will pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an  **uninsured motor vehicle** or **underinsured motor vehicle** or **hit-and-run motor vehicle** arising out of the ownership, maintenance or use of that auto.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or their representative and us. The dispute may be arbitrated if an agreement cannot be reached. However, for an **underinsured motor vehicle**, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

## EXCLUSIONS
### When Section IV, Part I Does Not Apply

1. This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or their legal representative has made a settlement or has been awarded a judgment of their claim without our prior written consent.
2. The Uninsured and Underinsured Motorists coverage will not benefit any self insurer, or disability benefits insurer.
3. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.
4. We do not cover any person while *occupying* a vehicle described in the Declarations on which Uninsured and Underinsured Motorists coverage is not carried.
5. We do not cover the *insured* while operating or *occupying* a motor vehicle owned by, furnished to, or available for the regular use of *you*, a spouse, or a resident *relative* of *you*, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the Uninsured and Underinsured Motorists coverage is provided.
6. We do not cover the *insured* while operating or *occupying* a motor vehicle without a reasonable belief that the *insured* is entitled to do so, provided that under no circumstances will an *insured* whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the *insured* is entitled to operate a motor vehicle.
7. *Bodily injury* or death caused by a motor vehicle operated by any person who is specifically excluded from coverage for bodily injury liability in the policy under which the Uninsured and Underinsured Motorist coverage is provided is not covered.
8. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the Uninsured and Underinsured Motorists coverage of the policy.
9. We do not cover any person suffering *bodily injury*, who is not an *insured* under the policy.
10. This coverage does not apply to any liability assumed under any contract or agreement.
11. This coverage does not apply to damage caused by an *insured's*:
    (a) participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
12. We do not cover attorney fees or litigation costs or expenses.
13. There is no coverage for *bodily injury* while an *owned auto* is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used in *peer-to-peer vehicle sharing* during the *vehicle sharing period*. However, with respect to a *temporary substitute auto*, this exclusion does not apply to *you* or *your relatives*, or to any other person *occupying* the *temporary substitute auto* with *your* permission. The actual use of the *temporary substitute auto* must be within the scope of that permission.
14. There is no coverage for *bodily injury* under this Section for any person or organization while any motor vehicle is being used:
    (a) to carry persons or property for compensation or a fee; or
    (b) for *ride-sharing*; or
    (c) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of newspapers or food.

    However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
    (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
    (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

    This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

## LIMITS OF LIABILITY

Regardless of the number of *insureds*, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident:

1. The limit of liability for Uninsured and Underinsured Motorists coverage stated in the declarations for "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by
   one person as the result of one accident.
2. The limit of liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

3.  When coverage is afforded to two or more autos, the  limits of liability shall apply separately to each auto as  stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

4.  If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.

5.  The amount payable under this Coverage will be reduced by all amounts:
    (a)  paid by or for all persons or organizations liable for the injury;
    (b)  paid or payable under the Bodily Injury Coverage of this policy;
    (c)  paid or payable under Auto Medical Payments Coverage of this policy; and
    (d)  paid or payable under the medical payments coverage, no fault coverage, personal injury protection, or other similar coverage of any other motor vehicle policy.

6.  The most we will pay for Underinsured Motorists coverage is the difference between the total limits of coverage the at-fault party has available for payments to the  **insured** and the underinsured motorists limits of this policy.

## OTHER INSURANCE

Coverage under Section IV, Part I may not be stacked, aggregated, or combined with other uninsured motorists coverage or underinsured motorists coverage.

If there is other applicable uninsured motorists coverage or underinsured motorists coverage, the maximum an  **insured** may recover under all applicable uninsured motorists coverages or underinsured motorists coverages is the highest applicable limit of liability for one (1) vehicle under one (1) of the available policies, even though separate premiums may have been paid for each policy or vehicle. If there is other applicable uninsured motorists coverage or underinsured motorists coverage, subject to the LIMITS  OF LIABILITY under Section IV, Part I, we will pay only our share of the damages.

Our share is the proportion that our limit of liability bears to the total of all available uninsured motorists coverage or underinsured motorists coverage limits.

However, any uninsured motorists coverage or underinsured motorists coverage we provide for **bodily injury** to **you** or a **relative** when not **occupying** an **owned auto**, subject to the LIMITS OF LIABILITY under Section IV, Part I, shall be excess over any other uninsured motorists coverage or underinsured motorists coverage and our coverage applies only in the amount by which it exceeds such other uninsured motorists coverage or underinsured motorists coverage.

If more than one uninsured motorists or underinsured motorists policy applies as excess, then:

(1)  the amount payable under this policy shall not exceed the difference between the uninsured motorists coverage or underinsured motorists coverage limit of the policy that applies as primary and the highest applicable uninsured motorists coverage or underinsured motorists coverage limit of any one of the uninsured motorists coverages or underinsured motorists coverages that applies as excess to primary uninsured motorists or underinsured motorists coverage; and

(2)  we are then liable, subject to the LIMITS OF LIABILITY under Section IV, Part I, only for our share which is the proportion that our limit of liability bears to the total of all available uninsured motorists coverage or underinsured motorists coverage limits that applies as excess to primary uninsured motorists or underinsured motorists coverage.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

## ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any  **insured** and us regarding:

    (a)  the extent to which the **insured** is legally entitled to recover against an owner or operator of an  **uninsured motor vehicle** and **underinsured motor vehicle** (i.e., issues of liability); or
    (b)  the amount of damages sustained by the **insured**

may be arbitrated. However, neither the  **insured** nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this Coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this Coverage as defined in this policy. Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by **you** and us.

Attorney fees and expenses will be paid by the party incurring them.

## TRUST AGREEMENT

When we make a payment under this Coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury** including any amounts recoverable from an insurer that is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner.

2.  The **insured** will hold in trust for our benefit all rights of recovery which they may have against any person or organization responsible for these damages. They will do whatever is necessary to secure all rights of recovery and

3. At our written request, the **insured**, in their own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The **insured** will execute and furnish us with any needed documents to secure their rights and obligations and our rights and obligations.

5. **You** will be required to prove all elements of the claim that are necessary to recover from the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

## CONDITIONS

The following conditions apply only to the Uninsured Motorists Coverage and Underinsured Motorists coverage:

1. NOTICE

As soon as possible after an accident, notice must be given to us or our authorized agent stating:

(a) the identity of the **insured**;

(b) the time, place and details of the accident; and

(c) the names and addresses of the injured, and of any witnesses.

If the **insured** or their legal representative files suit before we make a settlement under this Coverage, they must immediately provide us with a copy of the pleadings.

2. LIMITATIONS ON CLAIMS

Any arbitration or suit against us will be barred unless commenced within **3 years (three years)** from the date of the accident.

3. ACTION AGAINST US

Suit will not lie against us unless the **insured** or their legal representative have fully complied with all  the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the **insured** or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the **insured's** incapacity or death, their legal representative must, at our request, authorize us

to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:

(a) to the **insured** or their authorized representative;

(b) if the **insured** is a minor, to their parent or guardian; or

(c) if the **insured** is deceased, to their surviving spouse; otherwise

(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.


## PART II - UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE

Coverage is provided only where a premium and limit of liability is shown for the coverage on the  **Declarations Page**. With respect to coverage provided by this **PART**, the provisions of the policy apply unless modified by this **PART**.

## DEFINITIONS

The definitions of the terms **farm auto**, **owned auto**, **peer-to-peer vehicle sharing**, **peer-to-peer vehicle sharing program**, **peer-to-peer vehicle sharing program agreement**, **private passenger auto**, **ride-sharing**, **shared vehicle**, **shared vehicle driver**, **shared vehicle owner**, **temporary substitute auto**, **trailer**, **transportation network company**, **vehicle sharing delivery period**, **vehicle sharing period**, **vehicle sharing start time**, **vehicle sharing termination time**, **utility auto**, **you** and **your** under Section I apply to Section IV, Part II.

The definitions of the terms **actual cash value**, **betterment**, **depreciation** and **loss** under Section III apply to Section IV, Part II also.

The definition of **state** from Section IV, Part I applies to Section IV, Part II also.

Under this Part, the following definitions apply:

1. **Insured** means:

(a) **you** and **your** spouse if a resident of the same household;

(b) any person who is entitled to recover damages because of **property damage** sustained by an **insured** under (a) above.

If there is more than one **insured**, our limits of liability will not be increased.

2.  **Insured auto** is:
    (a)  an auto described in the declarations and covered by the liability coverages of this policy; or
    (b)  a **trailer** owned by **you**.
But the term **insured auto** does not include an auto used to carry passengers or goods for hire except in a car pool.

3.  **Property damage** means damage to or destruction of an auto owned by **you** and covered by the liability coverages of this policy.

4.  **Punitive or exemplary damage** means damage that is imposed to punish the wrongdoer and to deter others from similar conduct.

5.  **Uninsured motor vehicle** is a motor vehicle which:
    (a)  has no property damage liability bond, policy of insurance or cash or securities on file to cover  **property damage** at the time of the accident; or
    (b)  has property damage liability insurance in effect at the time of the accident but the insurer of the vehicle becomes insolvent or denies coverage.
    The term **uninsured motor vehicle** does not include:
    (a)  an **insured auto**;
    (b)  a motor vehicle owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
    (c)  a motor vehicle owned by the United States of America, any other national government, a  **state**, or a political sub-division of any such government or its agencies;
    (d)  a land motor vehicle or  **trailer** operated on rails or crawler-treads or located for use as a residence or premises;
    (e)  a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads;
    (f)  a trolley, streetcar, **trailer**, railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home.

## LOSSES WE PAY

Under this Coverage we will pay for damages to property caused by accident involving physical contact with an  **insured auto** for which the **insured** is legally entitled to recover from the owner or  operator of an **uninsured motor vehicle** arising out of the ownership, maintenance or use of that auto provided the owner or operator of  the **uninsured motor vehicle** is identified.

## EXCLUSIONS

### When this Coverage Does Not Apply

1.  The coverage does not apply to **property damage** if the **insured** or their legal representative has made a settlement or has been awarded a judgment on this claim without our prior written consent.

2.  This coverage shall not apply to the benefit of any property insurer.

3.  This coverage does not apply to **loss** or damage to personal property located in the **insured auto**.

4.  This coverage will not apply if the owner or operator of the at-fault  **uninsured motor vehicle** cannot be identified.

5.  We do not cover the United States of America or any of its agencies as an  **insured**, a third party beneficiary or otherwise.

6.  This coverage does not apply to **property damage** if the collision does not involve actual direct physical contact between the **insured auto** and the **uninsured motor vehicle**.

7.  Regardless of any other provisions of this policy, there is no coverage for  **punitive or exemplary damage**.

8.  This coverage does not apply to the first $250 of **property damage** to the property of each **insured** which is damaged in any one accident.

9.  We do not cover attorney fees or litigation costs or expenses.

10.  This coverage does not apply while any vehicle is leased or rented to others or given in exchange for any compensation, including while operated, maintained or used as part of **peer-to-peer vehicle sharing** during the **vehicle sharing period**. However, with respect to a **temporary substitute auto**, this exclusion does not apply to **you** and **your** spouse if a resident of the same household.

11.  This coverage does not apply for any person or organization while any vehicle is being used :
    (a)  to carry persons or property for compensation or a fee;
    (b)  for **ride-sharing**; or
    (c)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of newspapers or food.
    However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
    (i)  An **insured** receives no payment for using a vehicle for a car pool ride; or
    (ii)  An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an  **insured** is not required to be reported for income tax purposes.

This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.

12. This coverage does not apply to damage caused by an **insured's**:
   (a) participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

13. We do not cover the **insured** while operating or **occupying** a motor vehicle without a reasonable belief that the **insured** is entitled to do so, provided that under no circumstances will an **insured** whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the **insured** is entitled to operate a motor vehicle.

## LIMIT OF LIABILITY

Regardless of the number of **insureds**, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident to which this policy applies:

1. The limit of property damage liability stated in the Declarations is our total limit of liability for all damages to the property of one or more **insureds** as the result of any one accident. Coverage does not apply to the first two hundred and fifty dollars of the total amount of all **property damage** as the result of any one accident.

2. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.
   If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.
   The amount payable under this Coverage will be reduced by all amounts:
   a) paid by or for all persons or organizations liable for the **property damage**;
   b) paid or payable under any property insurance policy.

3. The most we will pay for any **loss**:
   a) is the **actual cash value** of the property at the time of **loss**;
   b) will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the **loss**.
   **Actual cash value** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

## OTHER INSURANCE

This insurance shall be excess over other valid and collectible insurance.

## TRUST AGREEMENT

When we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment any **insured** recovers from any person or organization legally responsible for the **property damage** including any amounts recoverable from an insurer that is or becomes the subject of insolvency proceedings through such proceedings or in any other lawful manner.

2. Any **insured** claiming benefits will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for their damages. They will do whatever is necessary to secure all rights of recovery and will do nothing after the **loss** to prejudice these rights.

3. At our written request, any **insured** claiming benefits, in their own name, will take through a designated representative appropriate action necessary to recover payment for damages from the legally responsible person or organization. That **insured** will pay us out of the recovery for our expenses, costs and attorney's fees.

4. Any **insured** claiming benefits will execute and furnish us with any needed documents to secure their rights and obligations, and our rights and obligations.

5. **You** will be required to prove all elements of the claim that are necessary to recover from the owner or operator of the **uninsured motor vehicle**.

## CONDITIONS

1. NOTICE
   As soon as possible after an accident, notice must be given to us or our authorized agent stating:
   (a) the identity of the **insured**;
   (b) the time, place and details of the accident; and
   (c) the names and addresses of any witnesses.
   If any **insured** or their legal representative files suit before we make a settlement under this coverage, they must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED
   After we receive notice of a claim, we may require any **insured** to take any action necessary to preserve their recovery rights against any allegedly legally responsible person or organization. We may require that **insured** to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US
Suit will not lie against us unless any *insured* claiming benefits or their legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM
The *insured* or other person making a *property damage* claim shall file a proof of loss with us as soon as practicable.

The proof of loss shall be a sworn statement as to the interest of the *insured* and anyone else in the property, any encumbrances upon the property, *actual cash value* at the time of the *loss*, and description and amount of all other insurance covering this property. Upon our request, the *insured* will show us the damaged property.

The *insured* shall protect the auto from further *loss*. Further *loss* due to failure to protect will not be covered. We will pay for reasonable expenses incurred for the protection of the auto.

5. PAYMENT OF LOSS
Any amount is payable:
(a) to the *insured* or their authorized representative;
(b) if the *insured* is a minor, to their parent or guardian; or
(c) if the *insured* is deceased, to their surviving spouse; otherwise
(d) a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.
We may, at our option, pay an amount due in accordance with (d) above.

6. LIMITATIONS ON CLAIMS
If the *insured* has not prejudiced our subrogation rights, each claim or suit for Uninsured Motorists Property Damage coverage must be made or brought within three (3) years after the date of the accident causing the *property damage*, or within one (1) year after the liability insurer for the owner or operator of the motor vehicle liable to the *insured* has become the subject of insolvency proceedings in any state, whichever is later.

---

## SECTION V - GENERAL CONDITIONS

---

**DEFINITIONS**

The definitions in Section I of the policy also apply to Section V.

These conditions apply to all Coverages in this policy.

1. TERRITORY
This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM
When *you* dispose of, acquire ownership of, or replace a *private passenger auto*, *farm auto* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES
The terms and provisions of this policy cannot be waived or changed, except by an amendment or endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state. The premium for each auto is based on the information we have in *your* file. *You* agree:
(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) that *you* will cooperate with us in determining if this information is correct and complete.
(c) that *you* will notify us of any changes in this information.
Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. ASSIGNMENT
*Your* rights and duties under this policy may not be assigned without our written consent. If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death, and until the expiration of the policy term:
(a) the executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of their duties;
(b) any person having proper custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5. **POLICY PERIOD**
Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

6. **CANCELLATION BY THE INSURED**
*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

7. **CANCELLATION BY US**
We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.
We will mail this notice:
(a) 10 days in advance if the policy has been in effect for less than 90 days and is not a renewal or if the proposed cancellation is for non-payment of premium or any of its installments when due;
(b) 30 days in advance in all other cases.
The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.
If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. The premium will be mailed to *you* prior to the effective date of cancellation. Payment or tender of unearned premium is not a condition of cancellation.

8. **CANCELLATION BY US IS LIMITED**
After this policy has been in effect for 90 days or, if the policy is a renewal, we will not cancel except for any of the following reasons:
(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.
(b) *You* obtained the policy through fraud, concealment, or misrepresentation.
(c) Any *insured* misrepresents a material fact in submitting a claim.
(d) *Your* license to drive or that of any family member covered as a driver has been suspended, revoked or expired. We will, however, rather than cancel the policy, exclude from all coverage the driver whose license was suspended, revoked or expired unless that driver is *you* or the principal operator.
Failure to cancel for any reasons listed above will not obligate us to renew this policy.

9. **RENEWAL**
This policy for *private passenger autos*, *farm autos*, or *utility autos* shall be issued or guaranteed renewable for successive policy periods totaling not less than one year. Condition **8. CANCELLATION BY US IS LIMITED**, still applies. We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. Written notice will also be provided if *you* refuse to provide us with renewal classification and rating information as we may require.
This policy will expire without notice if any of the following conditions exist:
(a) *You* do not pay any premium as we require to renew this policy, within 10 days following the mailing of the notice
    of cancellation as provided by Condition **7.** CANCELLATION BY US; or
(b) *You* have informed us or our agent that *you* wish the policy to be cancelled or not renewed; or
(c) *You* do not accept our offer to renew.

10. **OTHER INSURANCE**
If other insurance is obtained on *your* insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of  the other insurance.
If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy will terminate on the date *you* do so.

11. **DIVIDEND PROVISION**
*You* may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

12. **DECLARATIONS**
By accepting this policy, *you* agree that:
(a) the statements in *your* application and in the declarations are *your* agreements and representations;
(b) this policy is issued in reliance upon the truth of these representations; and
(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**13.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance and we may void this policy at any time, including after the occurrence of an accident or loss if *you* conceal or misrepresent any material facts or circumstances relating to this insurance:

(a)  at the time of application;

(b)  at any time during the policy period; or

(c)  in connection with the presentation or settlement of a claim.

**14.** EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**15.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Ohio are amended to conform to those statutes.

**16.** DISPOSAL OF VEHICLE

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy for that vehicle will terminate on the date and at the time  *you* do so.

**17.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Ohio.

**18.** CLAIM ADJUSTMENT TOOLS AND TECHNOLOGY

We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology.

---

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

---

**1.** SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using:

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

2. Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph **B.** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in **A.**1. above, our liability shall not exceed the lesser of the following:

(a)  the *actual cash value* of the property at the time of the occurrence; or

(b)  the cost to repair or replace the property, or any of its parts with other of like kind and quality; or

(c)  two months basic pay of the *insured*; or

(d)  the limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in **A.**2. above, our liability shall not exceed the lesser of the following:

(a)  the *actual cash value* of the property at the time of the occurrence; or

(b)  the cost to repair or replace the property, or any of its parts with other of like kind and quality; or

(c)  the limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

# EXHIBIT 2



# MARKET VALUATION REPORT

*Prepared for GEICO CASUALTY COMPANY*

# REPORT SUMMARY

## 🐞 CLAIM INFORMATION

| | |
|---|---|
| Owner | Perkins, Deeba |
| | 24451 Lake Shore Blvd |
| | Euclid, OH 44123-1260 |
| Loss Vehicle | 2013 Chevrolet Malibu Eco w/1SA |
| | Equip Pkg |
| Loss Incident Date | 06/10/2023 |
| Claim Reported | 06/12/2023 |

The CCC ONE® Market Valuation Report reflects CCC Intelligent Solutions Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO CASUALTY COMPANY.

Loss vehicle has 3% fewer than average mileage of 129,000.

## 🏛 INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 113513079 |
| Claim Reference | 0655816380101036-01 |
| Adjuster | Bates, Joshua |
| Odometer | 124,607 |
| Last Updated | 06/12/2023 11:10 AM |

## 🏷 VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 8,083.00** |
| Condition Adjustment | - $ 111.00 |
| **Adjusted Vehicle Value** | **$ 7,972.00** |
| Vehicular Tax (8%) | + $ 637.76 |
| Tax reflects applicable state, county and municipal taxes. | |
| Title, Registration and Other Fees* | + $ 21.00 |
| UNRELATED PRIOR DAMAGE* | - $ 3,460.79 |
| **Value before Deductible** | **$ 5,169.97** |
| Deductible* | - $ 500.00 |

| **Total** | **$ 4,669.97** |
|---|---|

Adjustments indicated with an Asterisk (*) have been determined by GEICO CASUALTY COMPANY and have been added here for convenience.

The total may not represent the total of the settlement as other factors (i.e. other applicable fees) may need to be taken into account.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology.............................2
Vehicle Information....................................3
Vehicle Condition.....................................6
Taxes and Fees.......................................8
Comparable Vehicles..............................9
Valuation Notes.......................................15
Supplemental Information.....................16

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

CCC ONE  **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# VALUATION METHODOLOGY

## How was the valuation determined?



**CLAIM INSPECTION**

GEICO CASUALTY COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



 **MARKET VALUATION REPORT**

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | EUCLID, OH  44123-1260 |
| VIN | 1G11D5RR7DF112006 |
| Year | 2013 |
| Make | Chevrolet |
| Model | Malibu |
| Trim | Eco |
| Body Style | w/1SA Equip Pkg |
| Body Type | Sedan |
| Engine - | |
|     Cylinders | 4 |
|     Displacement | 2.4L |
|     Fuel Type | Hybrid |
|     Carburation | Direct Injection |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3589 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 124,607 | + 289 |

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | | |
| | 12 Vehicle Market History Information | 09/09/2016 |
| Experian AutoCheck | No Title Problem Found | |
| National Highway Traffic Safety Administration | 9 Recalls | |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

  **MARKET VALUATION REPORT**

| | |
|---|---|
| Owner: Perkins, Deeba | |
| Claim: 0655816380101036-01 | |

# 🚐 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Odometer** | 124,607 | |
| **Transmission** | Automatic Transmission | ✔ |
| | Overdrive | ✔ |
| **Driver Convenience** | Keyless Entry | ✔ |
| | Message Center | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Power Trunk/Liftgate | ✔ |
| | Cruise Control | ✔ |
| | Intermittent Wipers | ✔ |
| | Tilt Wheel | ✔ |
| | Telescopic Wheel | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Console/Storage | ✔ |
| | Overhead Console | ✔ |
| **Instrument Panel** | Traction Control | ✔ |
| | Stability Control | ✔ |
| | Alarm | ✔ |
| | Air Conditioning | ✔ |
| | Climate Control | ✔ |
| | Rear Defogger | ✔ |
| | Hands Free | ✔ |
| | Communications System | ✔ |
| | Wood Interior Trim | 🗐 |
| **Radio** | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | CD Player | ✔ |
| | Auxiliary Audio Connection | ✔ |

To the left is the equipment of the loss vehicle that GEICO CASUALTY COMPANY provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗐 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

 **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚐 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

|  |  |  |
|---|---|---|
|  | Satellite Radio | ✔ |
|  | Equalizer | 🗐 |
| **Safety** | Air Bag (Driver Only) | ✔ |
|  | Passenger Air Bag | ✔ |
|  | Front Side Impact Air Bags | ✔ |
|  | Head/Curtain Air Bags | ✔ |
|  | Rear Side Impact Air Bags | ✔ |
| **Paint** | Clearcoat Paint | ✔ |
|  | Metallic Paint | 🗐 |
| **Front End** | Power Steering | ✔ |
|  | Power Brakes | ✔ |
|  | Anti-lock Brakes (4) | ✔ |
| **Glass And Mirrors** | Dual Mirrors | ✔ |
| **Seats** | Cloth Seats | ✔ |
|  | Bucket Seats | ✔ |
|  | Reclining/Lounge Seats | 🗐 |
| **Wheels** | 4-wheel Disc Brakes | ✔ |
|  | Aluminum/Alloy Wheels | ✔ |

 **MARKET VALUATION REPORT**

| Owner: Perkins, Deeba
| Claim: 0655816380101036-01

# 🚘 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE PRIVATE | **Guideline:** **Transmission:** Fluid slightly discolored. A few areas of seepage. **Engine:** Few small leaks. Belts and hoses firm, show minimal wear. Significant dirt and grease in engine compartment. | $ 0 |
| Tires | AVERAGE PRIVATE | **Notes:** Passenger Tires: RF-7/32; LF-7/32; RR-7/32; LR-7/32. % of Tread Wear-0.63. Condition Rating-Average Private. **Guideline:** **Front Tires:** 41% to 68% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) **Rear Tires:** 41% to 68% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) | $ 0 |
| Paint | AVERAGE PRIVATE | **Notes:** AFTER UPD FOR CLAIM #0655816380101034-01 **Guideline:** Few small deep chips and/or scratches. No significant peeling and/or flaking. Minor swirl marks. Slight Fading. | $ 0 |
| Body | AVERAGE PRIVATE | **Guideline:** **Sheet Metal:** Few dents and/or numerous dings. No significant surface rust. **Trim:** Minimal damage to components. Few dents and/or numerous dings. | $ 0 |
| Glass | AVERAGE PRIVATE | **Guideline:** Light surface scratches and/or pitting. Few chips. | $ 0 |
| Seats | ROUGH | **Notes:** ARGE TEARS COVERED WITH DUCT TAPE **Guideline:** Heavily soiled, faded and/or discolored. Numerous large tears, holes and/or burn marks. Heavily worn and bare spots. | - $ 111 |

GEICO CASUALTY COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Carpets | AVERAGE PRIVATE | **Guideline:** Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | AVERAGE PRIVATE | **Guideline:** Significant scratches and/or gouges. Components damaged and/or cracked. Significant wear. | $ 0 |
| Headliner | AVERAGE PRIVATE | **Notes:** SCUFFS **Guideline:** Few small holes and/or burn marks. Lightly scuffed. | $ 0 |

| **Total Condition Adjustments** | **- $ 111** |
|---|---|

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

**CCC ONE.  MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚗 TITLE, REGISTRATION AND OTHER FEES

## VEHICLE FEES

| | |
|---|---|
| Zip: | 44123 |
| Zip+4: | 1260 |
| Plates are: | Transferable |
| Salvage retained by: | Insurance Carrier |
| Third Party Vehicle: | No |

**Title Fees**

| | |
|---|---|
| Certificate of Title - (*Additional Reference 1*) | $ 15.00 |

**Registration Fees**

| | |
|---|---|
| Plate/Registration Transfer | $ 6.00 |
| **Total Title, Registration and Other Fees** | **$ 21.00** |

Fees listed have been identified to be applicable for reimbursement by the GEICO CASUALTY COMPANY based on information provided by GEICO CASUALTY COMPANY. Fees may include title, registration, license plate transfer and other related state/ jurisdictional fees.

Fees are determined by vehicle attributes, provided by the Insurance company, including, but not limited to, vehicle type, size, weight, primary usage, vehicle salvaged, or owner retained.

Reference links are provided for informational purposes only. The links and content contained in the links are not produced, maintained or affiliated with CCC, and CCC bears no responsibility for the content provided therein.

 **CCC ONE.** **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚘 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 124,607 | 173,000 | 110,000 | 78,346 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Remote Starter | ✘ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✘ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Liftgate | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Overhead Console | ✔ | ✔ | ✔ | ✔ |
| Home Link | ✘ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Communications System | ✔ | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✘ | ✘ | ✘ |
| Navigation System | ✘ | ✘ | ✔ | ✘ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Premium Radio | ✘ | ✔ | ✔ | ✘ |
| Satellite Radio | ✔ | ✔ | ✔ | ✔ |
| Equalizer | ✔ | ✘ | ✘ | ✘ |
| Electric Glass Roof | ✔ | ✘ | ✘ | ✘ |

**Comp 1** Updated Date: 05/16/2023
**2013 Chevrolet Malibu Eco W/2sa Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11F5RR0DF116537
**Dealership** J&w Auto
**Telephone** (216) 383-8296
**Source** Dealer Ad
**Distance from Euclid, OH**
5 Miles - Cleveland, OH

**Comp 2** Updated Date: 06/04/2023
**2013 Chevrolet Malibu Eco W/2sa Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11F5RR5DF120809
**Dealership** National Car Mart, Inc.
**Telephone** (216) 398-4125
**Source** Autotrader
**Stock #** 31807
**Distance from Euclid, OH**
18 Miles - Cleveland, OH

**Comp 3** Updated Date: 05/01/2023
**2013 Chevrolet Malibu Eco W/1sa Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11D5RR3DF104369
**Dealership** North Ridge Auto Center
**Telephone** (440) 595-5349
**Source** Dealer Ad
**Distance from Euclid, OH**
27 Miles - Madison, OH

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also

 **CCC ONE.**  MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Rear Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✔ | ✔ |
| Three Stage Paint | ✘ | ✔ | ✘ | ✘ |
| Metallic Paint | ✔ | ✔ | ✔ | ✘ |
| Fog Lamps | ✘ | ✔ | ✔ | ✘ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✘ | ✘ | ✔ | ✘ |
| Cloth Seats | ✔ | ✘ | ✘ | ✔ |
| Leather Seats | ✘ | ✔ | ✔ | ✘ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Heated Seats | ✘ | ✔ | ✔ | ✘ |
| Luggage/Roof Rack | ✘ | ✘ | ✔ | ✘ |
| Body Side Moldings | ✘ | ✔ | ✔ | ✘ |
| Backup Camera | ✘ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |

compared to in the Vehicle Condition section.

| | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| **List Price** | | $ 7,900 | $ 10,800 | $ 9,999 |
| **Adjustments:** | | | | |
| Make/Model/Trim | | - $ 225 | - $ 225 | |
| Options | | - $ 423 | - $ 1,092 | - $ 231 |
| Mileage | | + $ 1,879 | - $ 804 | - $ 1,935 |
| Condition¹ | | - $ 961 | - $ 961 | - $ 961 |
| **Adjusted Comparable Value** | | **$ 8,170** | **$ 7,718** | **$ 6,872** |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 **CCC ONE.** **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚘 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Odometer | 124,607 | 162,209 | 98,426 | 115,754 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Remote Starter | ✘ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✘ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Liftgate | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Overhead Console | ✔ | ✔ | ✔ | ✔ |
| Home Link | ✘ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Communications System | ✔ | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✘ | ✘ | ✘ |
| Navigation System | ✘ | ✔ | ✔ | ✘ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Premium Radio | ✘ | ✔ | ✘ | ✘ |
| Satellite Radio | ✔ | ✔ | ✔ | ✔ |
| Equalizer | ✔ | ✘ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | | | | |

**Comp 4**    Updated Date: 04/04/2023
**2013 Chevrolet Malibu Eco W/2sa**
**Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11F5RR9DF102376
**Dealership** Motor City Auto Sales
**Telephone** (440) 674-6664
**Source** Autotrader
**Stock #** 10018
**Distance from Euclid, OH**
34 Miles - Lorain, OH

**Comp 5**    Updated Date: 03/15/2023
**2013 Chevrolet Malibu Eco W/1sa**
**Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11D5RR1DF102247
**Dealership** Best Deals Auto Sales
**Telephone** (330) 745-5055
**Source** Dealer Ad
**Distance from Euclid, OH**
38 Miles - Akron, OH

**Comp 6**    Updated Date: 03/28/2023
**2013 Chevrolet Malibu Eco W/1sa**
**Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11D5RR5DF104552
**Dealership** Valley Auto Finance
**Telephone** (234) 806-0143
**Source** Dealer Ad
**Distance from Euclid, OH**
44 Miles - Warren, OH

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 **CCC ONE.  MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Rear Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✔ | ✘ | ✔ |
| Three Stage Paint | ✘ | ✘ | ✔ | ✘ |
| Metallic Paint | ✔ | ✘ | ✔ | ✔ |
| Fog Lamps | ✘ | ✔ | ✔ | ✘ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✘ | ✔ | ✘ | ✘ |
| Cloth Seats | ✔ | ✘ | ✔ | ✔ |
| Leather Seats | ✘ | ✔ | ✘ | ✘ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Power Passenger Seat | ✘ | ✔ | ✘ | ✘ |
| Heated Seats | ✘ | ✔ | ✘ | ✘ |
| Body Side Moldings | ✘ | ✔ | ✘ | ✔ |
| Backup Camera | ✘ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| | | | | |
| **List Price** | | $ 8,599 | $ 10,999 | $ 9,995 |
| **Adjustments:** | | | | |
| Make/Model/Trim | | - $ 225 | | |
| Options | | - $ 775 | - $ 548 | - $ 231 |
| Mileage | | + $ 1,673 | - $ 1,299 | - $ 514 |
| Condition¹ | | - $ 961 | - $ 961 | - $ 961 |
| **Adjusted Comparable Value** | | **$ 8,311** | **$ 8,191** | **$ 8,289** |

compared to in the Vehicle Condition section.

 **CCC ONE** **MARKET VALUATION REPORT** | Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 🚗 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 7 | Comp 8 |
|---|---|---|---|
| Odometer | 124,607 | 166,994 | 203,828 |
| Automatic Transmission | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ |
| Remote Starter | ✘ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ |
| Power Driver Seat | ✘ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ |
| Power Trunk/Liftgate | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ |
| Overhead Console | ✔ | ✔ | ✔ |
| Home Link | ✘ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ |
| Communications System | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✘ | ✘ |
| AM Radio | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ |
| Premium Radio | ✘ | ✔ | ✘ |
| Satellite Radio | ✔ | ✔ | ✔ |
| Equalizer | ✔ | ✘ | ✘ |
| Electric Glass Roof | ✘ | ✔ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ |
| Passenger Air Bag | | | |

**Comp 7**    Updated Date: 05/01/2023
**2013 Chevrolet Malibu Eco W/2sa Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11F5SR3DF163815
**Dealership** Valley Auto Finance
**Telephone** (234) 239-8513
**Source** Dealer Ad
**Distance from Euclid, OH**
44 Miles - Warren, OH

**Comp 8**    Updated Date: 04/24/2023
**2013 Chevrolet Malibu Eco W/1sa Equip Pkg 4 2.4l Hybrid Direct Injection**
**VIN** 1G11D5RR4DF114702
**Dealership** Valley Auto Finance
**Telephone** (234) 239-8513
**Source** Dealer Ad
**Distance from Euclid, OH**
44 Miles - Warren, OH

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, but may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

 CCC ONE. **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 7 | Comp 8 |
|---|---|---|---|
| Front Side Impact Air Bags | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ |
| Rear Side Impact Air Bags | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✔ | ✔ |
| Metallic Paint | ✔ | ✔ | ✔ |
| Fog Lamps | ✘ | ✔ | ✘ |
| Power Steering | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ |
| Cloth Seats | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ |
| Body Side Moldings | ✘ | ✔ | ✘ |
| Backup Camera | ✘ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ |
| **List Price** | | $ 8,995 | $ 6,995 |
| **Adjustments:** | | | |
| Make/Model/Trim | | - $ 225 | |
| Options | | - $ 352 | - $ 231 |
| Mileage | | + $ 1,774 | + $ 2,187 |
| Condition¹ | | - $ 961 | - $ 961 |
| **Adjusted Comparable Value** | | **$ 9,231** | **$ 7,990** |

 **MARKET VALUATION REPORT**

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# 📝 VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GEICO CASUALTY COMPANY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Ohio Administrative Code 3901-1-54.

 **CCC ONE.** MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# SUPPLEMENTAL INFORMATION

## CARRIER INFORMATION

**Prepared for:** GEICO CASUALTY COMPANY

**Web:** Get back on the road fast!

GEICO offers an easy-to-use service designed to help you save time and money.

Simply visit www.geico.com/replaceyourcar today or call

(877)-638-4119 to get started!!

 **VEHICLE HISTORY INFORMATION**

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### Vehicle Market History Information:

| | |
|---|---|
| This vehicle was reported to CCC on 07/30/2016 | Mileage: 22878 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 07/23/2016 | Mileage: 22878 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 08/17/2016 | Mileage: 22880 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 09/01/2016 | Mileage: 22880 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 10/02/2022 | Mileage: 109866 |
| Location: AutoTrader in CLEVELAND, OH | |
| This vehicle was reported to CCC on 10/09/2022 | Mileage: 109866 |
| Location: AutoTrader in CLEVELAND, OH | |
| This vehicle was reported to CCC on 09/25/2022 | Mileage: 111009 |
| Location: AutoTrader in CLEVELAND, OH | |
| This vehicle was reported to CCC on 09/18/2022 | Mileage: 111009 |
| Location: AutoTrader in CLEVELAND, OH | |
| This vehicle was reported to CCC on 08/08/2016 | Mileage: 22878 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 08/23/2016 | Mileage: 22880 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 09/12/2016 | Mileage: 22880 |
| Location: AutoTrader in AURORA, OH | |
| This vehicle was reported to CCC on 09/09/2016 | Mileage: 22880 |
| Location: AutoTrader in AURORA, OH | |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides GEICO CASUALTY COMPANY information reported by Experian regarding the **2013 Chevrolet Malibu (1G11D5RR7DF112006)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

## TITLE CHECK

Abandoned
Damaged
Fire Damage
Grey Market
Hail Damage
Insurance Loss
Junk
Rebuilt
Salvage

## RESULTS FOUND

✔ No Abandoned Record Found
✔ No Damaged Record Found
✔ No Fire Damage Record Found
✔ No Grey Market Record Found
✔ No Hail Damage Record Found
✔ No Insurance Loss Record Found
✔ No Junk Record Found
✔ No Rebuilt Record Found
✔ No Salvage Record Found

**LEGEND :**
✔ No Event Found
◯ Event Found
▤ Information Needed

**TITLE CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

## EVENT CHECK

NHTSA Crash Test Vehicle
Frame Damage
Major Damage Incident
Manufacturer Buyback/Lemon
Odometer Problem
Recycled
Water Damage
Salvage Auction

## RESULTS FOUND

✔ No NHTSA Crash Test Vehicle Record Found
✔ No Frame Damage Record Found
✔ No Major Damage Incident Record Found
✔ No Manufacturer Buyback/Lemon Record Found
✔ No Odometer Problem Record Found
✔ No Recycled Record Found
✔ No Water Damage Record Found
✔ No Salvage Auction Record Found

**EVENT CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

## VEHICLE INFORMATION

Accident
Corrected Title
Driver Education
Fire Damage Incident
Lease
Lien
Livery Use
Government Use
Police Use
Fleet
Rental
Fleet and/or Rental
Repossessed
Taxi use
Theft
Fleet and/or Lease
Emissions Safety Inspection
Duplicate Title

## RESULTS FOUND

▤ Accident Record Found
▤ Corrected Title Record Found
✔ No Driver Education Record Found
✔ No Fire Damage Incident Record Found
✔ No Lease Record Found
✔ No Lien Record Found
✔ No Livery Use Record Found
✔ No Government Use Record Found
✔ No Police Use Record Found
✔ No Fleet Record Found
✔ No Rental Record Found
✔ No Fleet and/or Rental Record Found
✔ No Repossessed Record Found
✔ No Taxi use Record Found
✔ No Theft Record Found
✔ No Fleet and/or Lease Record Found
✔ No Emissions Safety Inspection Record Found
✔ No Duplicate Title Record Found

**VEHICLE INFORMATION**

INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 CCC ONE. MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# SUPPLEMENTAL INFORMATION

## 📖 FULL HISTORY REPORT RUN DATE: 06/12/2023

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 04/25/2013 | OH | 2663 | Motor Vehicle Dept. | Title (Lien Reported) |
| 04/26/2013 | AKRON, OH | | Motor Vehicle Dept. | Registration Event/ Renewal (Lease Reported) |
| 12/21/2013 | AKRON, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 12/19/2014 | AKRON, OH | | Motor Vehicle Dept. | Registration Event/ Renewal (Lease Reported) |
| 12/19/2015 | AKRON, OH | | Motor Vehicle Dept. | Registration Event/ Renewal (Lease Reported) |
| 07/18/2016 | OH | 22878 | Auto Auction | Reported at Auto Auction |
| 08/09/2016 | AURORA, OH | 22878 | Motor Vehicle Dept. | Title (Lease Reported) |
| 09/23/2016 | EASTLAKE, OH | 22939 | Motor Vehicle Dept. | Title (Lien Reported) |
| 11/02/2016 | EASTLAKE, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 06/09/2017 | OH | 40000 | Independent Emission Source | Passed Emission Inspection |
| 06/16/2017 | EASTLAKE, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 04/10/2018 | MENTOR, OH | 56360 | Independent Repair Center | Brakes Serviced |
| 04/17/2018 | MENTOR, OH | 56575 | Independent Repair Center | Tires or Wheels Service Performed |
| 08/14/2018 | EASTLAKE, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 06/29/2019 | OH | 71000 | Independent Emission Source | Passed Emission Inspection |
| 07/03/2019 | EASTLAKE, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 05/20/2020 | EASTLAKE, OH | 88366 | Independent Repair Center | Tires or Wheels Service Performed |
| 06/18/2020 | EASTLAKE, OH | 88367 | Independent Repair Center | Tires or Wheels Service Performed |
| 09/11/2020 | EASTLAKE, OH | | State Agency | Right Rear Impact with Another Vehicle |
| 09/11/2020 | OH | | State Agency | Moderate Damage Reported |
| 06/28/2021 | EASTLAKE, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 03/29/2022 | EASTLAKE, OH | 106397 | Independent Repair Center | Brakes Serviced |
| 03/29/2022 | EASTLAKE, OH | | Independent Repair Center | Tires or Wheels Service Performed |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/06/2022 | EASTLAKE, OH | 109694 | Independent Repair Center | Tires or Wheels Service Performed |
| 07/12/2022 | EASTLAKE, OH | 109926 | Independent Repair Center | Battery Serviced or Replaced |
| 07/12/2022 | EASTLAKE, OH | | Independent Repair Center | Engine Serviced |
| 08/24/2022 | EASTLAKE, OH | | Motor Vehicle Dept. | Title (Lien Reported) |
| 08/24/2022 | EASTLAKE, OH | | Motor Vehicle Dept. | Corrected Title (Lien Reported) |
| 09/13/2022 | CLEVELAND, OH | | Dealer Record | Vehicle in Dealer Inventory |
| 09/19/2022 | CLEVELAND, OH | 109863 | Motor Vehicle Dept. | Title (Lien Reported) |
| 10/11/2022 | EUCLID, OH | 109874 | Motor Vehicle Dept. | Title (Lien Reported) |
| 11/18/2022 | EUCLID, OH | | Motor Vehicle Dept. | Registration Event/ Renewal |
| 11/18/2022 | OH | 110000 | Independent Emission Source | Passed Emission Inspection |

## AUTOCHECK TERMS AND CONDITIONS:

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

# CCC≡ONE.  MARKET VALUATION REPORT

Owner: Perkins, Deeba
Claim: 0655816380101036-01

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 9 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 12V224000

**Mfg's Report Date :** MAY 17, 2012

**Component :** ELECTRICAL SYSTEM: SOFTWARE

**Potential Number Of Units Affected :** 4,304

**Summary :** GENERAL MOTORS (GM) IS RECALLING CERTAIN MODEL YEAR 2013 CHEVROLET MALIBU VEHICLES MANUFACTURED FROM OCTOBER 24, 2011, THROUGH MARCH 31, 2012. AFTER AN EVENT OF HARD BRAKING, THE SENSING AND DIAGNOSTIC MODULE (SDM) MAY RESET ITSELF.

**Consequence :** IF THIS OCCURS DURING AN AGGRESSIVE TURNING MANEUVER, AND THEN AFTERWARDS A POTENTIAL VEHICLE ROLLOVER EVENT IS SENSED, THE ROOF RAIL AIRBAG MAY UNINTENTIONALLY DEPLOY. ADDITIONALLY, THE AIR BAGS AND/OR SEATBELT PRETENSIONERS MAY NOT DEPLOY DURING A SEVERE CRASH, INCREASING THE RISK OF PERSONAL INJURY.

**Remedy :** GM WILL NOTIFY OWNERS, AND DEALERS WILL REPROGRAM THE SDM. THIS SERVICE WILL BE PERFORMED FREE OF CHARGE. THE SAFETY RECALL BEGAN ON JUNE 13, 2012.

---

**NHTSA Campaign ID :** 13V173000

**Mfg's Report Date :** MAY 06, 2013

**Component :** ELECTRICAL SYSTEM

**Potential Number Of Units Affected :** 42,904

**Summary :** General Motors (GM) is recalling certain model year 2012 and 2013 Buick LaCrosse and Regal, and model year 2013 Chevrolet Malibu Eco vehicles equipped with eAssist. These vehicles may have a condition in which the Generator Control Module (GCM) may not function properly. This could cause a gradual loss of battery charge and the illumination of the malfunction indicator light.

**Consequence :** If the vehicle is continued to be driven, the engine may stall and/or the vehicle may not start. In addition, there may be a burning or melting odor, smoke, and possibly a fire in the trunk.

**Remedy :** GM will notify owners and dealers will test the GCM and replace it, as necessary, free of charge. The recall is expected to begin during June 2013. Owners may contact GM at 1-800-521-7300. GM's recall campaign number is 13136.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID :** 13V566000

**Mfg's Report Date :** NOV 13, 2013

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

CCC◼ONE.  MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

**Component :** ELECTRICAL SYSTEM , SEATS

**Potential Number Of Units Affected :** 14,909

**Summary :** General Motors LLC (GM) is recalling certain model year 2013 Chevrolet Malibu vehicles manufactured October 25, 2011, through June 29, 2012 and equipped with the 8-way power adjustable front seat feature. The wiring harness for the power seat may contact the seat frame which may chafe the harness.

**Consequence :** If the harness is chaffed enough to expose the wires, a short circuit could occur, resulting unintended movement of the seat, the seat to become inoperative, sparking under the seat, flickering lights, smoke, or possibly a fire.

**Remedy :** GM will notify owners, and dealers will inspect the wire harness and repair and secure it as necessary, free of charge. The recall began during December 2013. Owners may contact GM at 1-800-521-7300. GM's recall campaign number is 13342.

---

**NHTSA Campaign ID :** 15V164000

**Mfg's Report Date :** MAR 23, 2015

**Component :** VISIBILITY

**Potential Number Of Units Affected :** 87,063

**Summary :** General Motors LLC (GM) is recalling certain model year 2013-2015 Chevrolet Malibu vehicles October 24, 2011, to March 5, 2015. In the affected vehicles, the Slide or Tilt switch for the roof panel may not be adequately recessed to prevent the switch from inadvertently being pressed. As such, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard (FMVSS) No. 118, "Power-Operated Window, Partition, and Roof Panel Systems."

**Consequence :** The Slide or Tilt roof panel switch may inadvertently be pressed and the roof panel may auto-close unexpectedly, increasing the risk of a pinch injury.

**Remedy :** GM will notify owners, and dealers will update the Body Control Module (BCM) software to remove auto-close feature for certain switch positions, free of charge. The manufacturer has not yet provided a notification schedule. Owners may contact Chevrolet customer service at 1-800-222-1020. GM's number for this recall is 15176.

---

**NHTSA Campaign ID :** 15V245000

**Mfg's Report Date :** APR 24, 2015

**Component :** POWER TRAIN

**Potential Number Of Units Affected :** 3,690

**Summary :** General Motors LLC (GM) is recalling certain model year 2013 Chevrolet Malibu vehicles manufactured April 10, 2012, to August 2, 2012. In the affected vehicles, the console transmission gear selection indicator may not illuminate the shift position selected. As such, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard (FMVSS) number 102, "Transmission Shift Position Sequence, Starter Interlock, and Transmission Braking Effect."

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# CCC ONE.  MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

**Consequence :** If the console shift indicator does not illuminate the transmission gear selection, a driver could inadvertently select a transmission position other than the position the driver intended, increasing the risk of a crash.

**Remedy :** GM has notified owners, and dealers will replace the transmission gear selection control module, free of charge. The recall began on April 20, 2015. Owners may contact Chevrolet customer service at 1-800-222-1020. GM's number for this recall is 12162.

---

**NHTSA Campaign ID :** 16V502000

**Mfg's Report Date :** JUL 05, 2016

**Component :** ELECTRICAL SYSTEM , POWER TRAIN

**Potential Number Of Units Affected :** 7,620

**Summary :** General Motors LLC (GM) is recalling certain model year 2016-2017 Buick Verano and 2016 Chevrolet Malibu as the electronic park lock lever may allow the ignition key to be removed without the transmission being in PARK. Also, certain 2013 Buick Encore, 2011 Buick Regal, 2013-2014 Buick Verano, 2011-2016 Chevrolet Cruze, 2010-2013 Chevrolet Equinox 2013-2015 Chevrolet Malibu, and 2011-2013 GMC Terrain vehicles may have been serviced with similar defective replacement electronic park lock levers. As such, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard (FMVSS) number 114, "Theft Protection and Rollaway Prevention."

**Consequence :** If the key is removed without the transmission in PARK, the vehicle may rollaway as occupants are exiting, increasing the risk of injury.

**Remedy :** GM will notify owners, and dealers will inspect and if necessary replace the key cylinder lock housing, free of charge. The manufacturer has not yet provided a notification schedule. Owners may contact Chevrolet customer service at 1-800-222-1020, Buiick 1-800-521-7300, and GMC 1-800-462-8782. GM's number for this recall is 50490 and 50491.

---

**NHTSA Campaign ID :** 20V764000

**Mfg's Report Date :** December 10, 2020

**Component :** SUSPENSION

**Potential Number Of Units Affected :** 213,128

**Summary :** General Motors, LLC (GM) is recalling certain 2012-2013 Buick Regal, 2013 Chevrolet Malibu, and 2010-2013 Buick Lacrosse vehicles sold or ever registered in Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia, or Wisconsin. These vehicles may have rear toe links that received excessive electrocoating (e-coat) corrosion protection, which could cause the e-coat to become brittle and break away when contacted by road debris. Over time, the e-coat may chip away, exposing the metal toe link and making it more susceptible to corrosion. Corrosion may eventually cause the toe link to thin and ultimately to fracture.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

CCC ONE.  MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

**Consequence :** A rear toe link fracture may reduce the driver's ability to control the vehicle, increasing the risk of a crash.

**Remedy :** GM will notify owners, and dealers will replace the rear suspension toe links and adjuster fasteners free of charge. Parts are not currently available. Owners will be mailed an interim notification on February 15, 2021. A second notification will be mailed when parts are available, currently expected to be around March 21, 2021. Owners may contact Buick customer service at 1-800-521-7300 or Chevrolet customer service at 1-800-222-1020. GM's number for this recall is N202308930.

---

**NHTSA Campaign ID :** 21V633000

**Mfg's Report Date :** August 12, 2021

**Summary :** General Motors, LLC (GM) is recalling certain 2013 Buick Regal, Chevrolet Malibu, and Buick Lacrosse vehicles sold or ever registered in Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia, or Wisconsin. These vehicles may have rear toe links that received excessive electrocoating (e-coat) corrosion protection, which could cause the e-coat to become brittle and break away when contacted by road debris. Over time, the e-coat may chip away, exposing the metal toe link and making it more susceptible to corrosion. Corrosion may eventually cause the toe link to thin and ultimately to fracture.

**Remedy :** Dealers will replace the rear suspension toe links and adjuster fasteners, free of charge. Owner notification letters are expected to be mailed September 27, 2021. Owners may contact Buick customer service at 1-800-521-7300 or Chevrolet customer service at 1-800-222-1020. GM's number for this recall is N212330130.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.nhtsa.gov.

---

**NHTSA Campaign ID :** 21V00F000

**Mfg's Report Date :** December 22, 2021

**Potential Number Of Units Affected :** 4,271

**Summary :** General Motors, LLC (GM) is recalling certain 2010-2013 Buick Lacrosse, 2012-2013 Buick Regal, and 2013 Chevrolet Malibu vehicles sold or ever registered in Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia, or Wisconsin. These vehicles may have rear toe links that received an improper amount of electrocoating (e-coat) corrosion protection, which could cause the e-coat to become brittle and break away when contacted by road debris. Over time, the e-coat may chip away, exposing the metal toe link and making it more susceptible to corrosion. Corrosion may eventually cause the toe link to thin and ultimately fracture.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

CCC ONE  **MARKET VALUATION REPORT**

# SUPPLEMENTAL INFORMATION

**Remedy :** Dealers will replace the rear suspension toe links and adjuster fasteners, free of charge. Interim notification letters notifying owners of the safety risk will be mailed January 27, 2022. A second notice will be sent once the remedy is available. Owners may contact Buick customer service at 1-800-521-7300 or Chevrolet customer service at 1-800-222-1020. GM's number for this recall is N212346640. This recall is an expansion of NHTSA recalls 20V-764 and 21V-633.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS

vs.

GEICO CASUALTY COMPANY, ET AL.

CV 24 994917

**Judge:**  BRIAN MOONEY

**Pages Filed:**  1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins, Individually and on behalf of all others similarly situated
_____
Plaintiff(s)

Vs.

Geico Casualty Company, et al.
_____
Defendants(s)

Case Number _____

Judge: _____

Date: 03/25/2024

## Method of Service Requested:

Certified Mail Service ☑ Ordinary Mail Service ☐

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server ____

Residence Service by Process Server ____

Civ.R. 4.7 Waiver Requested ____

## Name(s) and Address(es) of Parties to Serve:

Geico Casualty Company
_____
One GEICO Center
_____
Macon, Georgia 31295-0001
_____
_____

## Additional Instructions:
_____
_____

Filing Party Name: Patrick J. Perotti      Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                                    CV 24 994917

    vs.

GEICO CASUALTY COMPANY, ET AL.          **Judge:** BRIAN MOONEY

**Pages Filed:** 1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins,individually and on behalf of all others similarly situated,
_____
Plaintiff(s)

Vs.
Geico Casualty Company, et al.
_____
Defendants(s)

Case Number _____

Judge: _____

Date: 3/25/2024

Method of Service Requested:

Certified Mail Service ☑ Ordinary Mail Service ☐

Personal Service by the Sheriff of _____ County ___

Residence Service by the Sheriff of _____ County ___

Personal Service By Process Server ____

Residence Service by Process Server ____

Civ.R. 4.7 Waiver Requested ____

Name(s) and Address(es) of Parties to Serve:

GEICO Choice Ins. Co.
One GEICO Plaza
Washington, DC 20076
_____

Additional Instructions:
_____
_____

Filing Party Name: Patrick J. Perotti    Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS

vs.

GEICO CASUALTY COMPANY, ET AL.

CV 24 994917

**Judge:** BRIAN MOONEY

**Pages Filed:** 1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins,individually and on behalf of all others similarly situated,
_____
Plaintiff(s)

Vs.
 Geico Casualty Company, et al. _____
Defendants(s)

Case Number _____

Judge: _____

Date: 3/25/2024

Method of Service Requested:

Certified Mail Service [✔] Ordinary Mail Service [ ]

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

Name(s) and Address(es) of Parties to Serve:

GEICO General Ins. Co.
_____
One GEICO Plaza
_____
Washington, DC 20076
_____
_____

Additional Instructions:
_____
_____

Filing Party Name: Patrick J. Perotti _____   Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                                              CV 24 994917

      vs.

                                       **Judge:**  BRIAN MOONEY

GEICO CASUALTY COMPANY, ET AL.

**Pages Filed:**  1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins,individually and on behalf of all others similarly situated,
_____

**Plaintiff(s)**

Vs.

Geico Casualty Company, et al.
_____

**Defendants(s)**

Case Number _____

Judge: _____

Date: 3/25/2024

### Method of Service Requested:

Certified Mail Service [✔] Ordinary Mail Service [ ]

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

### Name(s) and Address(es) of Parties to Serve:

GEICO Indemnity Co.
_____

One GEICO Plaza
_____

Washington, DC 20076
_____

_____

### Additional Instructions:

_____

_____

Filing Party Name: Patrick J. Perotti      Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                                        CV 24 994917

     vs.

GEICO CASUALTY COMPANY, ET AL.            **Judge:**  BRIAN MOONEY

**Pages Filed:**  1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins,individually and on behalf of all others similarly situated,

Plaintiff(s)

Vs.

Geico Casualty Company, et al.

Defendants(s)

Case Number _____

Judge: _____

Date: 3/25/2024

## Method of Service Requested:

Certified Mail Service [✓]  Ordinary Mail Service [ ]

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

## Name(s) and Address(es) of Parties to Serve:

GEICO Secure Ins. Co.

One GEICO Plaza

Washington, DC 20076

_____

## Additional Instructions:

_____

_____

Filing Party Name: Patrick J. Perotti     Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**March 25, 2024 10:53**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 3122314

DEEBA PERKINS                                          CV 24 994917

      vs.

                                       **Judge:**  BRIAN MOONEY

GEICO CASUALTY COMPANY, ET AL.

**Pages Filed:**  1



## Common Pleas Court of Cuyahoga County, Ohio
### Nailah K. Byrd, Clerk of Courts

## INSTRUCTIONS FOR SERVICE

Deeba Perkins, Individually and on behalf of all others similarly situated
_____
Plaintiff(s)

Vs.

Geico Casualty Company, et al. _____
Defendants(s)

Case Number _____

Judge: _____

Date: 03/25/2024

Method of Service Requested:

Certified Mail Service ☑ Ordinary Mail Service ☐

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

Name(s) and Address(es) of Parties to Serve:

Government Employees Insurance Company
One GEICO Plaza
Washington, DC 20076

Additional Instructions:

Filing Party Name: Patrick J. Perotti    Supreme Court ID if applicable: 0005481

Phone Number: (440) 352-3391

*For Use by Sheriff or Process Server Only*

Number of Service Attempts:

Address for Service if Different from address included above: _____